¶ 1. Rex Harris, father of Ashley Harris, filed a complaint on behalf of his minor *Page 1268 
daughter against McClatchy Planting Company and Amanda Ellis for personal injuries she sustained in an automobile accident. At the conclusion of the trial, the jury awarded Harris $25,000 in damages. Harris filed a motion for additur, or in the alternative a new trial. The trial court held that the motion for additur was well taken and awarded an additional $75,000, for a total sum of $100,000 in damages. Feeling aggrieved, McClatchy Planting Company and Amanda Ellis have filed a timely appeal. McClatchy and Ellis assert the following issue: whether the trial judge abused his discretion when he granted Harris's motion for additur. Finding this issue without merit, we affirm the trial judge.
 FACTS ¶ 2. On September 13, 1996, Ashley Harris was the passenger in a vehicle driven by Amanda Ellis. Ellis drove the vehicle into the back of a trailer which was attached to an automobile owned by McClatchy Planting Company. As a result of the automobile accident, Harris had to be removed from the vehicle with the "jaws of life." The testimony of Rex Harris, Ashley Harris's father, reveals that during this time and later in the emergency room, his daughter was in pain. Harris explained that Ashley was moaning. The medical records confirm this testimony. However, Ashley testified that she did not remember the accident or the subsequent events of that night. The record reveals that Ashley sustained numerous injuries.
 ¶ 3. The testimony at trial and the medical records disclose that Ashley had multiple lacerations which were located on her face and elbow. The lacerations to her face required forty-two stitches. As a result of the injuries to her face, she had bruising and swelling which temporarily caused her difficulty with eating regular food. Additionally, she had a severe sprain to her left ankle and a dislocated right hip. The injury sustained to her hip required the treating physician to reposition the bone. Due to these injuries, in particular her head injuries, Ashley was placed in the intensive care unit for initial treatment.
 ¶ 4. Ashley remained in the intensive care unit for four days. On September 15, 1996, the medical record stated that she was a little despondent and depressed, as well as suffering from pain. On this date the record also referred to her as "scared to death." While she was in the hospital she was given pain medication, namely Darvocet N100, morphine and Xanax.
 ¶ 5. The medical records reveal that to insure that her hip would stay in place, Ashley was placed in Buck's traction and later a full length leg splint. Furthermore, to assist Ashley with her mobility she was provided with crutches. Ashley underwent physical therapy to help her learn how to use the crutches. The initial evaluation note contained within a physical therapy note dated September 17, 1996, shows that during her treatment she cried and complained of pain in her left ankle. It took several days for Ashley to learn to manipulate the crutches because of the severe sprain to her left ankle. Ashley testified that on one occasion, after she had been discharged from the hospital, she fell while trying to manipulate the crutches.
 ¶ 6. Ashley was discharged from the hospital on September 21, 1996, on Darvocet N 100. After she was discharged from the hospital, she continued to have to see physicians for problems stemming from the September 13, 1996 automobile accident.
 ¶ 7. On October 3, 1996, she was admitted into the hospital for the treatment of a blood clot located in her left leg. The blood clot was treated with Heparin and heat packs. She was discharged on October 5, 1996. The medical record which *Page 1269 
documented the blood clot, also noted that she had seen Dr. Sandifer who informed her that she had an acetabula fracture of the right hip. Therefore, she would be required to wear the splint for an additional six weeks.
 ¶ 8. On October 24, 1996, she was continuing to have pain in her left ankle and right wrist and was given Daypro, an anti-inflammatory.
 ¶ 9. On December 23, 1996, she complained of pain in her hip and was given steroids and pain medication.
 ¶ 10. On January 7, 1997, she saw a dentist, who sanded four of her teeth as a result of damage sustained in the automobile accident.
 ¶ 11. On August 18, 1997, Ashley visited a physician for problems with an abscess in her mouth which appeared to have been caused by one of her stitches.
 ¶ 12. McClatchy and Ellis admitted liability; therefore, the only question at trial was the amount of damages to be awarded. The parties stipulated that Ashley had incurred $12,832.30 in medical expenses as a result of the automobile accident. Additionally, the deposition of Dr. Robert Allen Smith, a plastic surgeon, was read at the trial and established that she would require two surgeries to reduce the appearance of scarring on her face. In his deposition he explained that each of the surgeries would cost $6,000, for the total sum of $12,000. Dr. Smith further explained that even with the surgeries she would still have permanent scarring. McClatchy and Ellis did not call a witness to contest the reasonableness of the surgeries or the amount for them to be performed. At trial, Ashley testified that at that time she had not scheduled a date for the scar revision surgery. Indeed, she hoped that the scar revision surgery would not be necessary, but if she had too, she would have the procedure. The jury rendered a judgment in favor of Ashley in the total sum of $25,000. Subsequently, Ashley filed a motion for additur, or in the alternative a new trial.
 ¶ 13. The trial judge granted the motion for additur in the sum of $75,000 which meant that the total judgment was $100,000. Feeling aggrieved, McClatchy and Ellis appealed the granting of the additur.
 DISCUSSION WHETHER THE TRIAL JUDGE ABUSED HIS DISCRETION WHEN HE GRANTED HARRIS'S MOTION FOR ADDITUR. ¶ 14. McClatchy and Ellis filed a joint brief, and argue that the trial judge abused his discretion by substituting his judgment for that of the jury. They contend that the trial judge ignored the reasonable inferences supporting the jury's verdict and accepted only the inferences favorable to Ashley Harris. In particular, they contend that the trial court was in error when he concluded that $12,000 of the jury's verdict was attributable to future scar revision surgeries; therefore, when you considered this sum with the prior medical expenses it only left $200 for pain and suffering.
 ¶ 15. Mississippi Code Annotated Section 11-1-55 (Rev. 1991), grants the trial judge the authority to grant an additur and provides:
 The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the fact was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the *Page 1270 
overwhelming weight of the credible evidence. . . .
 ¶ 16. When this Court reviews whether the trial judge erred in denying a motion for additur we are limited to an abuse of discretion standard of review. Maddox v. Muirhead, 738 So.2d 742 (¶ 5) (Miss. 1999) (citing Rodgers v. Pascagoula Public School District, 611 So.2d 942,945 (Miss. 1992)). Our focus as an appellate court is whether the trial judge abused his discretion in denying or granting the motion for additur, not upon the jury's action in awarding damages. McNairTransport, Inc. v. Crosby, 375 So.2d 985, 986 (Miss. 1979). The party who is requesting an additur bears the burden of proving injury and other damages. Maddox, 738 So.2d at (¶ 5). The evidence must be reviewed in the light most favorable to the party against whom additur is sought and must give him or her the benefit of all favorable inferences reasonably drawn therefrom. Id. "Awards set by [a] jury are not merely advisory and generally will not be `set aside unless so unreasonable as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.'" Id. (citing Rodgers,611 So.2d at 945). "Additurs represent a judicial incursion into the traditional habitat of the jury, and therefore should never be employed without great caution." Id.
 ¶ 17. Though stated differently, the standards for overwhelming weight of the evidence and whether the jury returns a verdict that is influenced by bias, prejudice, or passion are basically the same thing.Green v. Grant, 641 So.2d 1203, 1208 (Miss. 1994). Essentially, the standard for overwhelming weight of the evidence is objective. It requires trial courts to apply this standard by reference to applicable law on recoverable damages in relation to the evidence before them. Id. This Court may infer bias, prejudice, or passion by contrasting the amount of damages with the amount of the verdict. Id. at 1209; Pham v.Welter, 542 So.2d 884, 888 (Miss. 1989); James v. Jackson, 514 So.2d 1224,1225 (Miss. 1987). "Each case involving the issue of an additur must `necessarily be decided on its own facts.'" Green, 641 So.2d at 1208
(quoting Leach v. Leach, 597 So.2d 1295, 1297 (Miss. 1992)).
 ¶ 18. The trial judge acknowledged the applicable statute and pertinent case law in conjunction with the above stated facts. More particularly, he stated: "this [c]ourt felt that this verdict was against the overwhelming weight of the evidence and was so inadequate that it struck this [c]ourt at first blush as being beyond all measure, unreasonable in amount and outrageous." McClatchy and Ellis have citedDePriest v. Barber, 2000-CA-00383-SCT (¶ 11) (Miss. Mar. 29, 2001), to support their argument. They rely on the fact that DePriest was held to be erroneously claiming that the fact finder omitted damages for pain and suffering, and contend that that is exactly what Harris is claiming. McClatchy and Ellis further state that "[t]he jury in this case, by its verdict did in fact, award in excess of $12,000 for pain, suffering, and disfigurement." However, this case does not present the same situation asDePriest. In the case at bar, it is not merely Harris who alludes to the fact that the jury did not allow but $200 for pain and suffering. The trial judge's order granting the additur supports this assertion, and in part states:
 The [c]ourt reasons that Petitioner [i.e., Ashley] was granted $12,832.30 for medical expenses and $12,000 for the repair of the scars on her face, leaving less than $200 for pain and suffering. Petitioner is due compensation for her discomfort while using crutches to walk, wearing a knee immobilizer, needing multiple doctor's visits, the noticeable scars to her face, as well as the pain she felt as a result of this accident. *Page 1271 
Therefore, in considering the court's findings with the evidence presented at trial while applying an abuse of discretion standard, we conclude that the trial judge properly granted the additur in the sum of $75,000, for a total award of $100,000 in damages. Accordingly, this issue is without merit.
 ¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF SUNFLOWER COUNTY ISAFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OFTHIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., BRIDGES, THOMAS, IRVING,MYERS AND CHANDLER, JJ., CONCUR. BRANTLEY, J., NOT PARTICIPATING.