876 So.2d 1070 (2004)
Mike TEASLEY, Appellant/Cross Appellee
v.
Pete BUFORD, Individually and Pete Buford d/b/a Buford Construction; Buford Construction Company, Inc., Appellees/Cross Appellants.
No. 2002-CA-00711-COA.
Court of Appeals of Mississippi.
June 29, 2004.
*1073 John M. Mooney, Jackson, attorney for appellant.
Alan C. Goodman, attorney for appellees.
EN BANC.
MYERS, J., for the Court.
¶ 1. Mike Teasley brought suit against Pete Buford individually, Pete Buford d/b/a Buford Construction and Buford Construction Company, Inc. in the Circuit Court of Warren County. The trial resulted in a jury verdict awarding Teasley *1074 $54,000 in compensatory damages for trespass, $500 in special damages and $5,500 for intentional or negligent infliction of emotional distress. From that verdict and award of damages, Teasley and Buford appeal and raise the following issues for this Court's consideration.

ISSUES PRESENTED
I. Did the trial court err by denying Teasley's motion for an additur?
II. Did the trial court err by denying Buford's motion for remittitur?
III. Did the trial court err by granting Buford's motion for a $5,000 credit due to Teasley's settlement with Ernie Jenkins?
IV. Did the trial court err by refusing to submit the issue of punitive damages to the jury?
V. Did the trial court err by granting or refusing certain jury instructions?
VI. Did the trial court err by denying Teasley's request for attorney's fees, expenses and expert fees?
VII. Did the trial court err by denying Buford's motion for JNOV because the jury award was against the overwhelming weight of the evidence and the controlling law of the case?

STATEMENT OF FACTS
¶ 2. Teasley owned approximately twenty-six acres of property in Warren County, Mississippi. Teasley's property adjoined land owned by Ernie Jenkins. Buford Construction Company, Inc., owned and operated by Pete Buford, was contracted by Jenkins to do construction work on Jenkins's property in March of 2000. During that time, Buford admitted that he trespassed onto Teasley's property by removing a fence and crossing the boundary line. Teasley alleged that Buford removed several trees from his property and over 800 cubic feet of dirt. The removal of dirt created a slope on Teasley's property. Several engineers told Teasley that a retaining wall was necessary to keep the slope from eroding onto Jenkins's property. An historian came to Teasley's property and told him that an old historical burial site was located near the excavation of dirt and therefore the burial remains might have been disturbed.
¶ 3. On March 29, 2000, Teasley filed a complaint in the Circuit Court of Warren County alleging trespass. He named as defendants Pete Buford, individually, Pete Buford d/b/a Buford Construction Company Inc., Buford Construction Company, Inc., Grey Farris and Ernie Jenkins. Grey Farris was later dismissed with prejudice. The trial began on January 7, 2002. Before the questioning of the first witness, Teasley settled his claim with Jenkins for $5,000. The trial proceeded against Buford only and resulted in a jury verdict awarding Teasley $54,000 in compensatory damages on the trespass claim, $500 in special damages, and $5,500 in damages for intentional or negligent infliction of emotional distress.
¶ 4. After the verdict was rendered, Teasley filed a post-trial motion for an additur, attorney's fees, expenses and expert fees. Buford filed post-trial motions for credit of settlement by co-defendant, remittitur and JNOV. The trial court issued an order denying Teasley's motion for additur and attorney's fees. The trial court issued another order denying Buford's motion for JNOV and remittitur but granting his motion for credit of settlement. Pursuant to that order, the final judgment was amended to $55,000 to reflect the settlement. Both parties timely perfected their appeals with this Court for consideration of the issues.

*1075 LEGAL ANALYSIS
I. DID THE TRIAL COURT ERR BY DENYING TEASLEY'S MOTION FOR AN ADDITUR?
II. DID THE TRIAL COURT ERR BY DENYING BUFORD'S MOTION FOR REMITTITUR?

A. Additur
¶ 5. Teasley argues that the trial court erred by denying his post-trial motion for an additur because the jury verdict was influenced by bias, prejudice or passion and the damages awarded were contrary to the overwhelming weight of the credible evidence. The trial judge is given the authority to grant an additur by Mississippi Code Annotated Section 11-1-55 (Rev.1991), which provides in part:
The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the fact was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of the credible evidence....
¶ 6. When reviewing the trial court's decision to deny a motion for an additur, we are limited to an abuse of discretion standard. Burge v. Spiers, 856 So.2d 577, 579(¶ 6) (Miss.Ct.App.2003). The burden of proving damages is on the party who seeks the additur. Gaines v. K-Mart Corp., 860 So.2d 1214, 1220 (¶ 21) (Miss.2003). The evidence must be reviewed in a light most favorable to the party against the additur and must give that party the benefit of all favorable inferences drawn therefrom. McClatchy Planting Co. v. Harris, 807 So.2d 1266, 1270 (¶ 16) (Miss.Ct.App.2001). An additur should be granted with great caution because it signifies "a judicial incursion into the traditional habitat of the jury." Burge, 856 So.2d at 579-80(¶ 6) (citing Gibbs v. Banks, 527 So.2d 658, 659 (Miss.1988)). A jury award will not be set aside unless "so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." Rodgers v. Pascagoula Pub. Sch. Dist., 611 So.2d 942, 945 (Miss.1992).
¶ 7. In the case at bar, Buford admitted trespassing onto Teasley's land and removing the dirt which caused the slope. What was disputed was the necessity of a retaining wall to keep the slope from eroding and the cost of such a wall. The jury heard conflicting testimony regarding the wall. Leland Hennington and Michael Taylor, both civil engineers and experts for Teasley, testified that the slope was eroding and needed a soldier pile retaining wall to stabilize it. They testified that the approximate cost of such a wall was between $1.2 and $2.2 million. The jury also heard from Eddie Templeton, a civil engineer and expert for Buford, who stated that erosion was not occurring on the slope and that the slope could be safely left alone with no retaining wall. Templeton stated that, if a wall was necessary, the two most cost-effective walls were the soldier beam lagging wall and the mechanically stabilized earth wall, which cost $56,000 and $38,000 respectively.
¶ 8. It is the jury who determines the weight of the testimony and the credibility of the witnesses at trial and it is the primary province of the jury to determine the amount of damages to award. Burge, 856 So.2d at 580(¶ 9). The trial judge stated the following in his order denying Teasley's request for an additur:

*1076 That there was no evidence exhibited during or post-trial that would indicate that the jury was influenced by bias, prejudice, or passion. The evidence allowed during trial from the testimony of the experts for both the Plaintiff and the Defendant, gave a range of costs for the building of a retaining wall of $37,200.00 to in excess of $1,000,000.00. Therefore the jury verdict of $54,000.00 in damages for the trespass was supported by testimony offered at trial.
We do not find that the trial court abused its discretion by denying Teasley's motion for an additur because the verdict was supported by the evidence and in no way evinced bias, prejudice or passion on the part of the jury.

B. Remittitur
¶ 9. Buford cross-appeals and asserts that the trial court erred by denying his motion for a remittitur. Buford argues that a remittitur was proper because the verdict was contrary to the overwhelming weight of credible evidence and against the controlling law.
¶ 10. The standard of review of the trial court's denial of a remittitur is the same as the standard for an additur. Whitten v. Cox, 799 So.2d 1, 18 (¶ 45) (Miss 2001). On appeal, we will not reverse the decision of the trial court unless it amounts to an abuse of discretion. Burge, 856 So.2d at 580(¶ 6). As we stated regarding the trial court's denial of Teasley's motion for an additur, the jury award will not be set aside unless it is deemed outrageous and unreasonable. The jury heard the testimony of the experts from both sides regarding the need for a retaining wall and the costs of such structures. Buford's own expert, Eddie Templeton, testified that the cheapest retaining wall would cost between $38,000 and $56,000. As the trier of fact, the jury chose to award Teasley $54,000 for the trespass claim.
¶ 11. The trial judge stated the following is his order denying Buford's remittitur request: "That there was no evidence exhibited during or post-trial that would indicate that the jury was influenced by bias, prejudice or passion. There was also evidence given by the Defendant's expert to support the $54,000 verdict on damages for the trespass...." We will not disturb the finding of the jury in this case because the trial court did not abuse its discretion by ruling that the verdict of $54,000 was supported by the evidence and in no way evinced bias, prejudice or passion on the part of the jury.

III. DID THE TRIAL COURT ERR BY GRANTING BUFORD'S MOTION FOR A $5,000 CREDIT DUE TO TEASLEY'S SETTLEMENT WITH ERNIE JENKINS?
¶ 12. Teasley asserts that the trial court erred by granting Buford's motion for a $5,000 credit of settlement by a co-defendant. Ernie Jenkins and Teasley reached a settlement agreement before the trial ended. The terms and amount of the settlement were announced to the Court in chambers and the jury was instructed that Jenkins was no longer a party to the case. The amount of the settlement was never disclosed to the jury. After the jury returned its award for damages in the amount of $60,000, the trial judge credited Buford for the $5,000 settlement with Jenkins and lowered the award to $55,000.
¶ 13. Our supreme court has specifically authorized the trial judge to take such action and adjust the judgment by the amount of the settlement. Pickering v. Industria Masina I Traktora, 740 So.2d 836, 841 (¶ 11) (Miss.1999). In that case, the court stated:
This Court has announced an acceptable procedure to be used to determine the *1077 damages due a plaintiff where co-defendants are involved and one co-defendant has settled with the plaintiff. That procedure allows the jury to be informed of the existence of a settlement but not the amount of settlement (if settlement occurs after the trial begins then it will be necessary to inform the jury why the defendants are no longer present). Whittley v. City of Meridian, 530 So.2d 1341, 1346 (Miss.1988). If the jury returns a judgment in excess of the settlement the judge can simply adjust the judgment by the amount of the settlement. Id.

Pickering, 740 So.2d at 841 (¶ 11). According to Estate of Hunter v. General Motors Corp., 729 So.2d 1264, 1276 (¶ 44) (Miss.1999), settling tortfeasors are to be included in allocations of fault based on comparative negligence principles. In this case, no fault was allocated to the settling party, Jenkins. Neither party raises the issue of failure to allocate fault to Jenkins. The parties did not request an allocation at trial. As such, our review is limited to cases that pre-date the adoption of Mississippi Code Annotated Section 85-5-7 (Rev.1999) which provides that with several exceptions, tort liability is several rather than joint and several, meaning that a defendant is liable to the plaintiff for damages only in proportion to his percentage of fault.
¶ 14. The trial judge did not err by granting Buford credit for the $5,000 settlement with Jenkins. The jury found Teasley's total damages as $60,000 and the trial judge properly reduced the verdict to reflect the $5,000 Teasley had already received from Jenkins.

IV. DID THE TRIAL COURT ERR BY REFUSING TO SUBMIT THE ISSUE OF PUNITIVE DAMAGES TO THE JURY?
¶ 15. Teasley argues that the trial court erred by refusing to submit the issue of punitive damages to the jury. When this Court reviews a trial court's decision of whether to submit the issue of punitive damages to the jury, we employ an abuse of discretion standard of review. Doe v. Salvation Army, 835 So.2d 76, 81 (¶ 17) (Miss.2003). A claimant does not have an automatic right to punitive damages. Id. at 79(¶ 7). Mississippi Code Annotated Section 11-1-65 (Supp.2003) states that if specific criteria are met, the trial court will then determine if the issue of punitive damages may be submitted to the jury. The statute states the following in pertinent part:
(1) In any action in which punitive damages are sought:
(a) Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.
(b) In any action in which the claimant seeks an award of punitive damages, the trier of fact shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages.
(c) If, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing before the same trier of fact to determine whether punitive damages may be considered.
(d) The court shall determine whether the issue of punitive damages may be submitted to the trier of fact; and, if so, the trier of fact shall determine whether *1078 to award punitive damages and in what amount....
Miss.Code Ann. § 11-1-65 (Supp.2003).
¶ 16. The statute clearly grants the trial court the authority, as a gate-keeper, to initially determine whether the facts presented merit submitting the issue to the trier of fact. Id. The trial court when determining whether the issue of punitive damages should be submitted to the jury should decide if, under the totality of the circumstances, a reasonable hypothetical trier of fact could have found either malice or gross negligence or reckless disregard. Summers v. St. Andrew's Episcopal Sch., Inc., 759 So.2d 1203, 1215 (¶ 53) (Miss.2000). In the case of a trespass, punitive damages may be awarded if the proof shows that the trespass was willful, grossly negligent or wanton. Walker v. Murphree, 722 So.2d 1277, 1283 (¶ 25) (Miss.Ct.App.1998).
¶ 17. In the case sub judice, Teasley argues that the issue of punitive damages should have been submitted to the jury. As the claimant, Teasley was required to prove by clear and convincing evidence that Buford's actions amounted to "actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or actual fraud." Miss.Code Ann. § 11-1-65(1)(a) (Supp.2003). After reviewing the evidence presented, the trial judge noted a complete absence of a showing of any willful or wanton disregard by Buford for the rights of Teasley. It was due to this absence of proof that the trial judge denied Teasley's request for punitive damages.
¶ 18. A review of the record shows that Buford thought the property belonged to Jenkins not Teasley. Buford had permission from Jenkins to enter the property he thought was owned by Jenkins. Once Buford was aware of the trespass, he did not enter Teasley's property again. We find that the trial court did not err by refusing to submit the issue of punitive damages to the jury.

V. DID THE TRIAL COURT ERR BY GRANTING OR REFUSING CERTAIN JURY INSTRUCTIONS?
¶ 19. When reviewing jury instructions on appeal, we must consider the instructions as a whole with no one instruction read alone or taken out of context. Haggerty v. Foster, 838 So.2d 948, 953(¶ 4) (Miss.2002). When the instructions read as a whole "fairly announce the law of the case and create no injustice, no reversible error will be found." Whitten, 799 So.2d at 16 (¶ 39). The trial judge has discretion in granting jury instructions. Southland Enter. Inc. v. Newton County, 838 So.2d 286, 289(¶ 9) (Miss.2003).

A. Destruction of Trees and the Statutory Penalty for Destruction of Trees
¶ 20. Teasley argues that the trial court erred by refusing his proposed jury instructions on the issues of destruction of trees and the statutory penalty for destruction of trees. Mississippi Code Annotated Section 95-5-10(1) (Rev.1994) provides the following with regard to cutting trees without the consent of the owner:
(1) If any person shall cut down, deaden, destroy or take away any tree without the consent of the owner of such tree, such person shall pay to the owner of such tree a sum equal to double the fair market value of the tree cut down, deadened, destroyed or taken away, together with the reasonable cost of reforestation, which cost shall not exceed Two Hundred Fifty Dollars ($250.00) per acre.
After hearing the evidence presented by Teasley, the trial judge ruled that the statutory issue of destruction of trees would not go before the jury because Teasley did *1079 not provide enough specificity on the number of trees cut by Buford or the fair market value of the trees. Teasley testified that he thought Buford cut approximately seventy-five trees, but admitted that was a guess. The way he ascertained the approximate number of trees cut was by measuring off the tract of land where the trees were located. No precise number was presented. Teasley was also uncertain regarding the size of the trees cut by Buford. He stated that the diameters of the trees ranged from three inches to eighteen inches. No testimony was provided on the fair market value of the trees cut.
¶ 21. As the plaintiff, Teasley bore the burden of showing how many trees were cut before he could recover the statutory penalty for the destruction of trees. Kelley v. Welborn, 217 Miss. 16, 63 So.2d 413, 416 (1953). A party has a right to have his theory of the case presented to the jury if there is credible evidence which supports the theory. Nolan v. Brantley, 767 So.2d 234, 240-41 (¶ 16) (Miss.Ct.App.2000). As such, the trial court did not err by refusing Teasley's instruction on the statutory destruction of trees.

B. Nuisance and Special Damages
¶ 22. The trial court determined that the jury instruction on nuisance would most likely confuse the jury so the instruction was refused. Throughout his pleadings and the trial, Teasley presented no claims or evidence of nuisance. It was only at the jury instruction phase of the trial that Teasley wanted the issue of nuisance brought before the jury. According to Nolan, the trial judge was not obligated to grant an instruction which was not supported by the evidence. Nolan, 767 So.2d at 240-41 (¶ 16).
¶ 23. The trial judge granted Teasley's instruction regarding special damages proximately caused by Buford's trespass. Buford cross-appeals and argues that the trial court erred by granting Teasley's jury instruction regarding special damages because the instruction was based on the case of City of Jackson v. Keane, 502 So.2d 1185 (Miss.1987), a nuisance case. Instruction C-2 reads:
Members of the Jury:
The Court instructs the jury that in addition to the damages to the Plaintiff's property, the Plaintiff may also be entitled to Special Damages if proven by a preponderance of the evidence. These Special Damages, if any, are damages separate, distinct, and independent of the damage to the Plaintiff's property. If from the preponderance of the evidence you find that as a direct and proximate result of the trespass of the Defendants Buford Construction and Pete Buford, the Plaintiff Teasley suffered in the past Special Damages you may consider the following elements:
(1) any annoyance, discomfort, or inconvenience; and
(2) any physical sickness suffered by Plaintiff Teasley as a direct proximate result of the trespass of the Defendants Buford Construction and Pete Buford. If the Plaintiff has failed to prove by a preponderance of the evidence any of the elements above then you shall find for the Defendants as to the issue of Special Damages.
The court in Keane held:
In addition [to diminution in value], landowners may recover special damages proved. These special or incidental damages are elements of damage separate, distinct, and independent of the depreciation of the value of the property or of the depreciation of the rental or usable value of the property. Included in the category of special or incidental *1080 damages are annoyance, discomfort, inconvenience, and sickness.
Keane, 502 So.2d at 1187 (citing City of Oxford v. Spears, 228 Miss. 433, 87 So.2d 914, 916 (1956)). A review of the record and the wording of jury instruction C-2 shows that the trial judge relied on Keane when making his ruling. The instruction tracks the wording of Keane by referring to special damages due to annoyance, discomfort, inconvenience and physical sickness. The Spears case which Keane cites as authority on this point was a nuisance case where the court held that if a defendant maintains a nuisance by polluting a stream and thereby renders the land unfit or less valuable, the measure of damages to the owner of the land is diminution in market value for a permanent injury or diminution in rental or useable value for a temporary injury. Spears, 87 So.2d at 916. In Spears, the court continued by stating that the proof did not show a permanent injury but an abatable nuisance; therefore, damages should be limited to the depreciation in rental value and any special damages that are proven. Id.
¶ 24. Unlike the cases of Spears and Keane, Teasley offered no proof or claim of nuisance by Buford. Specifically, Teasley's claim did not involve run-off or pollution of a stream but trespass. Spears and Keane allow special damages specifically for nuisance. No authority was cited to the trial court and to this Court regarding special damages available on a trespass claim. The trial court refused the jury instruction on nuisance due to a lack of proof and jury confusion and therefore should have also refused the instruction on special damages based solely upon Keane.

C. Reforestation
¶ 25. The trial court did not err by refusing Teasley's instruction on reforestation of trees. As we stated above, Teasley did not meet his burden of proof regarding Mississippi Code Annotated Section 95-5-10. Specifically, Teasley did not offer any proof on how many acres of trees were cut. The statute clearly states that reasonable reforestation costs may be granted up to $250 per acre. The jury was not presented with any evidence regarding the size of the area where the trees were cut. This statute, which is penal in nature, must be strictly construed and applied in the clearest of cases. McCorkle v. LouMiss Timber Co., 760 So.2d 845, 853 (¶ 31) (Miss.Ct.App.2000). Due to the lack of evidence on this point, the trial court did not err by refusing Teasley's instructions on reforestation.

D. Intentional and Negligent Infliction of Emotional Distress
¶ 26. Buford cross-appeals and argues that the trial court erred by granting Teasley's instructions on negligent and intentional infliction of emotional distress. Buford's argument is that there was not enough proof submitted at trial on the issue of emotional distress to warrant a jury instruction on that issue, specifically that Teasley failed to prove demonstrable harm. A review of the jury instructions given reveals that they were correct statements of law regarding negligent and intentional infliction of emotional distress. Buford's argument focuses on the proof offered by Teasley which goes to the sufficiency of the evidence, not the language of the jury instruction. See Whitten, 799 So.2d at 17 (¶¶ 41-42). Because the instructions were correct statements of the law which presented the jury with the correct legal standards, the trial judge did not err by granting the instructions.

VI. DID THE TRIAL COURT ERR BY DENYING TEASLEY'S REQUEST FOR ATTORNEY'S FEES, EXPENSES AND EXPERT FEES?
*1081 ¶ 27. Teasley asserts that the trial court erred by denying his post-trial request for attorney's fees and expenses. The trial court's decision regarding attorney's fees is subject to an abuse of discretion standard of review. Harrison v. McMillan, 828 So.2d 756, 765 (¶ 32) (Miss.2002). Teasley premised his request for attorney's fees and expenses on Mississippi Code Annotated Section 95-5-10(3) (Rev.1994) which states: "All reasonable expert witness fees and attorney's fees shall be assessed as court costs in the discretion of the court." In his order denying the request for fees and expenses the trial judge stated:
This statute [95-5-10] also allows the granting of attorney's fees to the Plaintiff if liability is found. The Court at trial ruled that the evidence of how many trees were cut and the value of the trees cut lacked sufficient specificity in order for the question of liability under this statute to go to the jury for their consideration. Therefore, since the jury did not use this statute in their determination of liability, the request for attorney's fees pursuant to this statute is inapplicable.
Because the statute upon which Teasley relied as the basis of his request for fees and expenses was ruled inapplicable based on insufficient evidence, the trial court did not abuse its discretion by denying Teasley's request for fees and expenses based on the statute.

VII. DID THE TRIAL COURT ERR BY DENYING BUFORD'S MOTION FOR JNOV BECAUSE THE JURY AWARD OF $54,000 FOR THE TRESPASS WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND CONTRARY TO THE CONTROLLING LAW OF THE CASE?
¶ 28. Buford asserts that the trial court erred by denying his motion for JNOV because the jury award of $54,000 for the trespass was against the overwhelming weight of the evidence and contrary to the controlling law of the case. The trial court denied Buford's motion stating:
That in order for this Court to grant a Judgment Notwithstanding the Verdict the Court must determine whether there was sufficient credible evidence at trial to support the verdict of the jury, giving the non-moving party all favorable inferences that can be drawn from the evidence. The Court finds that there was sufficient credible evidence to support the verdict of the jury, therefore the Motion for JNOV is denied.
The standard of review for the denial of a JNOV and directed verdict are the same. Hopkins v. Schaeffer, 840 So.2d 737, 738(¶ 6) (Miss.Ct.App.2003). In Hopkins, this Court held:
We are required to view the evidence in a light most favorable to the non-moving party, and if the facts are so overwhelmingly in favor of the moving party that a reasonable juror could not have agreed with the verdict at hand, we must reverse. Sperry-New Holland, 617 So.2d at 252. If there is substantial evidence, however, in support of the verdict, such that a reasonable person may have reached different conclusions, we must affirm. Id.

Hopkins, 840 So.2d at 738(¶ 6). The above standard of review is predicated on the fact that the trial judge employed the correct law. Jernigan v. Humphrey, 815 So.2d 1149, 1152 (¶ 12) (Miss.2002).
¶ 29. Our supreme court reiterated the rules for determining damages for injury to real property in Harrison v. McMillan, 828 So.2d 756, 769 (¶ 43) (Miss.2002). The court stated that the general rule for the measure of damages in an action for permanent *1082 injury to land where there is no willful trespass is the difference in value of the property before and after the damage to the premises. Id. This "before-and-after" rule has been repeatedly cited. Bynum v. Mandrel Indus., Inc., 241 So.2d 629, 634 (Miss.1970); Chevron Oil Co. v. Snellgrove, 253 Miss. 356, 175 So.2d 471, 474 (1965); Waggener v. Leggett, 246 Miss. 505, 150 So.2d 529, 531 (1963); Union Producing Co. v. Pittman, 245 Miss. 427, 146 So.2d 553, 556 (1962). In Sun Oil Company v. Nunnery, 251 Miss. 631, 170 So.2d 24, 31 (1964), the court held that if the injury to the property is permanent in nature, the proper measure of damages is usually the difference between the fair market value of the entire tract before the injury and the fair market value after the injury.
¶ 30. However, the before-and-after rule is not a "hard and fast rule" nor is it "inflexible" and may not be applicable under all circumstances. Harrison, 828 So.2d at 770 (¶ 43) (citing Bynum, 241 So.2d at 634-35). In Bynum, the court stated the following:
It [the before-and-after rule] will not apply where there is a more definite, equitable, and accurate way by which the damages may be determined. Where the thing which is destroyed or injured, although a part of, or attached to, the realty, has a distinct value without reference to the realty on which it stands or from which it grows, the recovery is for the value or depreciation of value of the thing destroyed or injured, and not for the difference in the value of the land before and after the destruction; the recovery may be the value of the thing destroyed or the cost of its repair.
Bynum, 241 So.2d at 634-35.
¶ 31. The trial judge gave the following instruction to the jury regarding the measure of damages for the trespass:
The Court instructs you, that if you find Plaintiff Mike Teasley, has shown by a preponderance of the evidence that his property has been damaged by the acts of trespass by Buford, then you must award damages to Mike Teasley for the smaller amount of (1) or (2) below:
(1) The difference in the value of the land before the injury and the value after the injury; or
(2) The cost of restoring the land to its former condition.
There was testimony presented at trial that over 800 cubic feet of dirt was wrongfully removed from Teasley's property creating a slope with a height of between seventeen and twenty-three feet in various places. The dirt was cut at an angle as opposed to vertically, making the slope unstable. Two civil engineers testified that the slope would eventually fail and that in order to stabilize the dirt and prevent further erosion, a retaining wall should be constructed. The two experts for Teasley testified that the estimated cost of such a structure was between $1 and $2 million. This was Teasley's evidence regarding cost of restoration. Buford produced conflicting evidence regarding cost of restoration. His expert testified that the slope could be "left as is" but that if a retaining wall was constructed, the approximate costs of a suitable structure would be in the range of $38,000 to $56,000.
¶ 32. Both parties provided evidence regarding diminution in value. Teasley testified that he paid $220,000 for the property in 1998. Teasley's expert, Lamar Tate, an environmental auditor, testified that the Teasley property had a negative environmental value because the cost of fixing the environmental problems *1083 on the property would be more than the property was worth. Buford's expert, Doug Upchurch, a real estate appraiser, testified that Teasley's property suffered a decrease in fair market value of $2,000. The jury was presented with conflicting evidence on the issue of damages, both for diminution in value and cost of restoration. The jury heard all the testimony regarding damages and came up with a figure of $54,000 in compensatory damages. The proper amount of damages is a question of fact. Boyd v. Smith, 390 So.2d 994, 1000 (Miss.1980). The amount of damages awarded is within the province of the jury. Herring v. Poirrier, 797 So.2d 797, 809 (¶ 41) (Miss.2000). The trial court did not err by denying Buford's motion for JNOV because the verdict was supported by substantial evidence.
¶ 33. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY IS AFFIRMED ON DIRECT APPEAL AS TO $54,000 IN COMPENSATORY DAMAGES FOR TRESPASS, $5,500 FOR INTENTIONAL OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AND THE $5,000 CREDIT FOR SETTLEMENT AND IS REVERSED AND RENDERED ON DIRECT APPEAL AS TO THE $500 FOR SPECIAL DAMAGES AND IS AFFIRMED ON CROSS-APPEAL. COSTS ARE DIVIDED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., LEE, IRVING, CHANDLER AND GRIFFIS, JJ., CONCUR. THOMAS, J., NOT PARTICIPATING.