910 So.2d 624 (2005)
Dillon RENFROE, Appellant
v.
Brad BERRYHILL d/b/a J & B Mill Store, Appellee.
No. 2003-CA-01453-COA.
Court of Appeals of Mississippi.
March 1, 2005.
*625 Yancy B. Burns, Jackson, attorney for appellant.
*626 Andy Lowry, Oxford, Bradley E. Dean, John E. Gough, Jr., Robert L. Goza, Ridgeland, attorneys for appellee.
Before LEE, P.J., MYERS and CHANDLER, JJ.
MYERS, J., for the Court.
¶ 1. On April 17, 2002, Dillon Renfroe filed his complaint against Brad Berryhill d/b/a J & B Mill Store, alleging that Berryhill had negligently caused Renfroe to suffer serious injuries to his ankle. Renfroe filed motions in limine and for partial summary judgment, both dealing with the issue of Renfroe's employment status. These motions were denied, and the case proceeded to trial. The jury returned a verdict in favor of Renfroe and awarded him $20,000; however, the jury also found Renfroe to be five percent contributorily negligent, thereby reducing the total award by $1,000. Renfroe filed a post-trial motion for new trial on the issue of damages or in the alternative for an additur, but these motions were denied.
¶ 2. Aggrieved by the trial court's judgment, Renfroe now appeals, raising the following three issues:
I. DID THE TRIAL COURT ERR IN FAILING TO INSTRUCT THE JURY THAT CONTRIBUTORY NEGLIGENCE COULD NOT BE ASSIGNED IF RENFROE WAS FOUND TO BE AN EMPLOYEE?
II. DID THE TRIAL COURT ERR IN ALLOWING EVIDENCE OF THE PARTIES' PAST FRIENDSHIP AND FAMILY RELATIONSHIP?
III. DID THE TRIAL COURT ERR IN REFUSING TO ORDER AN ADDITUR?
¶ 3. Finding error in the circuit court's treatment of the employment issue, we reverse and render as to that issue only. Finding no other reversible error, we affirm the judgment of the circuit court in all other respects.

FACTS
¶ 4. On January 9, 2003, Renfroe, an employee or former employee of the J & B Mill Store, and Berryhill, owner/manager of the J & B Mill Store, were engaging in "horseplay" outside of the store. The horseplay consisted of a friendly wrestling or tussling bout. Unfortunately, after attempting some kind of tripping maneuver, Berryhill fell on top of Renfroe, and Renfroe's ankle was broken rather severely. Nothing in the record indicates that the injury resulted from anything other than the horseplay; that is, Renfroe does not allege that Berryhill somehow injured him on purpose, and both parties testified that they were just playing around ("tussling" or "wrestling"), as they had done on prior occasions.
¶ 5. Berryhill's wife is Renfroe's cousin, and Renfroe and Berryhill had been friends for some time previous to this action. The record shows that Renfroe incurred roughly $15,000 in medical bills.

LEGAL ANALYSIS

I. DID THE TRIAL COURT ERR IN FAILING TO INSTRUCT THE JURY THAT CONTRIBUTORY NEGLIGENCE COULD NOT BE ASSIGNED IF RENFROE WAS FOUND TO BE AN EMPLOYEE?
¶ 6. In his brief, Renfroe raises two issues on the question of his employment status; however, we have recast those two issues into this one single issue, as the substance of the two separate issues stated by Renfroe is the same.
¶ 7. Renfroe argues that if the jury found him to be an employee of Berryhill, then contributory negligence could not be assigned, pursuant to Mississippi Code Annotated *627 § 71-3-9 (Rev.2000). Because of this, Renfroe argues that the trial court erred in not instructing the jury on how to handle the question of contributory negligence if they found Renfroe to be an employee of Berryhill.
¶ 8. Berryhill argues that the issue of employment status was not raised in the initial pleadings and was not tried by express or implied consent. Because of this, so Berryhill argues, the issue of employment status was not properly before the jury, and contributory negligence should have been assigned. In the alternative, Berryhill argues that this Court should reverse and render if we find error in the trial court's handling of the employment status issue and that no new trial is warranted, because the only thing that the employment status issue could possibly affect is the finding of contributory negligence.

STANDARD OF REVIEW
¶ 9. Our general task in reviewing challenges to jury instructions calls us to view the instructions as a whole in order to determine whether the jury was adequately instructed as to the law applicable to the case. Adkins v. Sanders, 871 So.2d 732, 736 (¶ 9) (Miss.2004); Teasley v. Buford, 876 So.2d 1070, 1078 (¶ 19) (Miss.Ct.App. 2004). More specifically in this regard we have held:
This Court does not review jury instructions in isolation. Jackson v. Daley, 739 So.2d 1031, 1037 (Miss.1999). Rather, we read the instructions as a whole. Entergy Miss., Inc. v. Bolden, 854 So.2d 1051, 1054 (Miss.2003). We will not find reversible error "where the instructions actually given, when read together as a whole, `fairly announce the law of the case and create no injustice.'" Id. (quoting Coleman v. State, 697 So.2d 777, 782 (Miss.1997)). If the instructions granted "adequately instruct the jury, a party may not complain of the refused instruction." Turner v. Temple, 602 So.2d 817, 823 (Miss.1992) (citing Purina Mills, Inc. v. Moak, 575 So.2d 993, 996 (Miss. 1990); Payne v. Rain Forest Nurseries, Inc., 540 So.2d 35, 40 (Miss.1989)). Furthermore, the trial court need not charge the jury with an "instruction that `incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.'" Bolden, 854 So.2d at 1054.
Adkins, 871 So.2d at 736 (¶ 9).

DISCUSSION
¶ 10. Before looking to the instructions given, we should note a ruling that occurred earlier in the case. In denying Renfroe's motion for partial summary judgment, the court concluded that the question of Renfroe's employment status was a fact issue that should be decided by the jury. Yet, later, when the employment issue came up in the court's consideration of proposed jury instructions, the trial judge refused, for fear of confusing the jury, to give any instruction specifically on the issue of employment status and its relationship to the issue of contributory negligence. Thus, after earlier concluding that the jury should decide the issue of employment status, the court in the end refused to allow the jury to decide the issue. These two rulings are clearly inconsistent.
¶ 11. Also, curiously, the court gave an instruction to the effect that employers with five or more employees are required to maintain workers' compensation coverage. But this instruction was not accompanied by any other instructions explaining the relevance of the presence or absence of workers' compensation coverage or the task of the jury in deciding the issue of employment status.
*628 ¶ 12. Our review of the record demonstrates that the other instructions fairly informed the jury of standard matters such as what preponderance of the evidence means and what elements are required to be proved to establish negligence. Yet, in the midst of these standard, and generally unobjectionable instructions, there appears the seemingly random instruction, noted above, about when an employer is required to maintain workers' compensation coverage. In context, this workers' compensation instruction appears to be unrelated to any of the other instructions, and because of this, seems somewhat random or incomplete. In other words, the workers' compensation instruction merely hints at an issue that was present, namely the issue of employment status, instead of providing adequate instruction to the jury on that issue.
¶ 13. Thus, our review of the record and the instructions given leads us to conclude that, while the individual instructions given were correct in themselves, when taken separately, the instructions as a whole, when taken together, failed to fairly and adequately announce the law of the case, particularly in addressing the employment status and contributory negligence issues. Id. The jury was sent into deliberations without having been instructed on how the question of Renfroe's employment status could affect their verdict. The jury was instructed that employers meeting certain criteria are required to maintain workers' compensation coverage, but the jury was not instructed on what workers' compensation coverage had to do with the case. We find that this represents a failure to fairly and adequately announce the law of the case on the issue of Renfroe's employment status.
¶ 14. The relevance of Renfroe's employment status lies in the fact that if the jury found Renfroe to be an employee, then Berryhill's failure to maintain workers' compensation coverage would, pursuant to Miss.Code Ann. § 71-3-9, preclude common law defenses such as contributory negligence. Thus, the issue of Renfroe's employment status bore directly upon the issue of contributory negligence, and the jury was not instructed on the relationship between these two issues.
¶ 15. Moreover, one of the primary aspects of Berryhill's case was the defense of contributory negligence, and one of the primary aspects of Renfroe's case became, by the time of the trial (more will be said on this below), Renfroe's status as an employee. In this regard we have held, "A party has the right to have his theory of the case presented to the jury by instructions, provided that there is credible evidence that supports that theory." McGee v. State, 820 So.2d 700, 705 (¶ 9) (Miss.Ct.App. 2000) (citation omitted). In the record we find credible evidence presented to support Renfroe's theory of his employment status in addition to Berryhill's theory of contributory negligence, if Renfroe was found not to be an employee. This stands as another inadequacy in the instructions as a whole: they failed to accurately present the parties' theory of the case. Id.
¶ 16. Having noted the deficiencies in the jury instructions, we must examine Berryhill's argument about the employment status issue not being raised in the initial pleadings and not being tried by express or implied consent. Very simply, the record reflects that the issue was, in fact, tried by implied consent.
¶ 17. The Mississippi Supreme Court has held quite clearly that if no objection is raised to the introduction of issues not embraced within the original pleadings, such issues will be deemed to be tried by implied consent. Lahmann v. Hallmon, *629 722 So.2d 614, 619 (¶¶ 15-16) (Miss.1998); Weiss v. Weiss, 579 So.2d 539, 542-43 (Miss.1991); Queen v. Queen, 551 So.2d 197, 200 (Miss.1989). Our supreme court has also held that a finding of implied consent requires that the opposing party recognize (or should recognize) that an issue not raised in the original pleadings was being introduced at trial. Shipley v. Ferguson, 638 So.2d 1295, 1300 (Miss. 1994).
¶ 18. The record of the case sub judice reveals that Berryhill failed to object to the introduction of matter related to the issue of Renfroe's employment status and that Berryhill recognized the introduction of this issue which was not embraced within the original pleadings. At the hearing on the motions in limine and for partial summary judgment, Renfroe clearly and expressly raised the issue of his employment status, an issue not raised in the original pleadings, and asserted arguments based upon that issue. Indeed, Renfroe's motion for partial summary judgment was little more than an attempt to have the employment status issue decided before the full trial, so as to preclude certain defenses that would otherwise be available to Berryhill.
¶ 19. Berryhill's counsel, instead of objecting to the introduction of this issue as raising something not embraced in the original pleadings, argued that the employment status issue raised fact issues precluding summary judgment. Later, at trial Berryhill's counsel not only failed to object to questions on the employment status issue that were posed to Renfroe and other witnesses, but Berryhill's counsel also asked the witnesses numerous questions relating to Renfroe's employment status. In addition, when the parties were examining and selecting jury instructions, Berryhill's counsel made arguments, again without objection, relating to instructions on the issue of Renfroe's employment status. Based upon such evidence in the record, we find that Berryhill cannot legitimately claim that he did not recognize Renfroe's employment status as a live and very relevant issue by the time of trial.
¶ 20. Therefore, because Berryhill failed to object and because his actions at trial indicate that he did recognize the entrance of the issue into the case, we find that the issue of Renfroe's employment status was tried by implied consent. Lahmann, 722 So.2d at 619 (¶¶ 15-16); Shipley, 638 So.2d at 1300.
¶ 21. Returning then to the issue of the jury instructions, we find there to be merit in the contention that the jury should have been instructed about how the employment status issue would effect the issue of contributory negligence. This is because, as noted above, Miss.Code Ann. § 71-3-9 states that an employer who fails to maintain workers' compensation coverage forfeits common law defenses, including contributory negligence, in an action at law brought by an injured employee. Therefore, Renfroe's employment status bore directly upon the issue of contributory negligence, and an instruction on this relationship between employment status and contributory negligence should logically have followed the workers' compensation instruction.
¶ 22. Our review of the record reveals that Renfroe's employment status was not ultimately decided below, and the evidence in the record is inconclusive on the question of Renfroe's employment status. However, in his brief Berryhill has offered to concede that Renfroe was an employee at the time of the incident. This concession by Berryhill is premised upon the argument that the employment status issue can affect nothing but the finding of contributory negligence. We agree, and we find that Berryhill's concession of the *630 employment status issue obviates the need for a new trial and effectively resolves this issue.
¶ 23. Therefore, since Berryhill has offered to concede the employment status and workers' compensation coverage issues, the judgment of the circuit court is reversed and rendered to remove the assignment of contributory negligence to Renfroe.

II. DID THE TRIAL COURT ERR IN ALLOWING EVIDENCE OF THE PARTIES' PAST FRIENDSHIP AND FAMILY RELATIONSHIP?
¶ 24. Renfroe argues that the admission of evidence relating to his past friendship and family relationship with Berryhill was an abuse of discretion. Berryhill argues that the evidence was properly admitted.

STANDARD OF REVIEW
¶ 25. We review the admission or exclusion of evidence for abuse of discretion, and, if we find an abuse of discretion, we will reverse only where the error adversely affects a substantial right of a party. Gibson v. Wright, 870 So.2d 1250, 1258 (¶ 28) (Miss.Ct.App.2004).

DISCUSSION
¶ 26. The trial court, in admitting the evidence in question, noted that the probative value of the evidence outweighed its prejudicial effect. The court also declared that the jury needed to know of the relationship between the parties, at the very least, in order to consider the issue of intent. Our review of the record reveals that intent was never a relevant issue in this case, as neither party argued that the injury was intentionally inflicted. Thus, there may have been an abuse of discretion in admitting this evidence. However, we are not convinced that this was an abuse of discretion; and, in any event, even were we to find definitively that this was an abuse of discretion, we could not find that a substantial right of Renfroe's had been adversely affected. This is because the jury rendered a verdict in Renfroe's favor and awarded him an amount in excess of his actual damages. Therefore, we find that the admission of this evidence did not constitute reversible error, as it did not adversely affect a substantial right of Renfroe.

III. DID THE TRIAL COURT ERR IN REFUSING TO ORDER AN ADDITUR?
¶ 27. Renfroe argues that the trial court should have ordered an additur, because the jury award did not provide adequate compensation for his injuries. Berryhill argues that the award does not strike mankind at first blush as outrageous and that the trial court did not abuse its discretion in refusing to order an additur.

STANDARD OF REVIEW
¶ 28. We review a trial court's decision on a motion for additur for abuse of discretion. Teasley v. Buford, 876 So.2d 1070, 1075 (¶ 6) (Miss.Ct.App.2004). Because damage awards are within the traditional domain of the jury, we will only order an additur with great caution, when the jury award is "so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." Id. (quoting Rodgers v. Pascagoula Pub. Sch. Dist., 611 So.2d 942, 945 (Miss.1992)).

DISCUSSION
¶ 29. Our review of the record indicates that Renfroe proved approximately $15,000 in actual damages, and the jury awarded him $20,000. This amount, given the evidence in the record, cannot be said *631 to be "so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." Id. On the contrary, this amount appears to be fair in light of the amount of actual damages proven. Therefore, we find that the trial court did not abuse its discretion in refusing to order an additur.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY IS REVERSED AND RENDERED TO REMOVE THE ASSIGNMENT OF CONTRIBUTORY NEGLIGENCE, AND AFFIRMED IN ALL OTHER RESPECTS, THEREBY MAKING THE TOTAL AWARD TO APPELLANT TO BE $20,000. ALL COSTS OF THIS APPEAL ARE TO BE DIVIDED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.
KING, C.J., BRIDGES AND LEE, P.JJ., CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ. CONCUR. IRVING, J., CONCURS IN RESULT ONLY.