CITY OF LAUREL, MISS. *v.* BUSH, et ux.

No. 41393 May 9, 1960 120 So. 2d 149

*Welch, Gibbes & Graves,* Laurel, for appellant.

*A. S. Scott, Jr.,* Laurel, for appellee.

Klye, J.

This case is before us on appeal by the City of Laurel, defendant in the court below, from a judgment of the Circuit Court of the Second Judicial District of Jones County rendered in favor of Jim Edd Bush and his wife, plaintiffs, in the sum of $4,000, in an action for damages for an alleged trespass committed by the City on a strip of land lying along the south side of the Magnolia Park Place Subdivision in said City of Laurel.

This is the second time the case has been before us on appeal. See Bush v. City of Laurel, 234 Miss. 93, 105 So. 2d 562, decided October 13, 1958.

The record shows that the appellees, Jim Edd Bush and his wife, during the year 1954, were the owners of a parcel of land in the City of Laurel, containing approximately 12 acres, lying immediately north of and adjoining the Mason Memorial Park. The Bush land, according to the deed under which the Bushes had acquired title consisted of a fractional part of the NE¼ of the SE¼ of Section 30, Township 9 North, Range 11 West. The Mason Memorial Park land was owned by the City, which had acquired title to the land by a deed of conveyance from the Laurel Realty Corporation dated March 24, 1930. The Memorial Park land, according to the deed under which the City had acquired title, included all that part of the SE¼ of the SE¼ of Section 30, Township 9 North, Range 11 West, lying East of the Seventh Avenue, north of Twentieth Street, and west of Block A of the subdivision of Mrs. Arizona Rowell. The record shows that the land was held in trust by the City for the purposes set forth in a formal resolution adopted by the Mayor and Board of Commissioners on December 17, 1951, whereby the City had agreed not to sell the park property but to hold the same in trust for the purposes set forth in said resolution, which recited that the agreement was made in consideration of the action of certain interested citizens in turning over to the City as trustee a trust fund amounting to approximately $40,000 to be used for the purpose of

creating and maintaining a public garden on said land for scientific and educational purposes. The City agreed to keep the said property and maintain the same as the William H. Mason Memorial Gardens, with a proviso that a school building might be located on a certain part of the land.

The record shows further that in August 1954 the appellees employed a surveyor to subdivide and plat their property lying immediately north of the Mason Memorial Park property, for the purpose of establishing a subdivision to be known as the Magnolia Park Place Subdivision. When the survey was made it was found that the south boundary line of the Bush land, which, according to the description contained in the appellees' deed, was the south boundary line of the 40-acre tract described as the NE¼ of the SE¼ of Section 30, was located approximately 42 feet north of an old fence which the appellees claimed had been accepted for many years as the south boundary line of their property. When the appellees learned that they had no record title to the 42 ft. strip of land lying north of the old fence, the appellees had prepared an amended plat of their subdivision leaving out the 42 ft. strip of land to which they had no record title; and the amended plat was accepted by the Mayor and Commissioners.

The record also shows that either before or after their amended plat was approved, the appellees, through their attorney, presented a petition to the Mayor requesting that the City release its claim of title to the strip of land as a part of the Memorial Park property. The petition was referred to the city attorney, for a legal opinion on the question presented, and on June 29, 1955, the city attorney advised the Mayor that, assuming that the statements made in the affidavits presented by the appellees in support of their claim of title by adverse possession were true, and that such adverse possession had existed prior to the date the City acquired its title to the property, in view of the provisions of the resolu-

tion adopted by the Mayor and Board of Commissioners on December 17, 1951, the city attorney did not believe that the City could legally execute any kind of instrument conveying the 42 ft. strip of land to the appellees. The appellees then filed a bill of complaint in the Chancery Court of the Second Judicial District of Jones County to confirm their title to the 42 ft. strip of land.

The appellees' suit to confirm their title to the strip of land was filed on November 11, 1955, and while that suit was pending the appellees filed another suit in the same court against the appellant asking that the appellant be enjoined from making any claim of title to the 42 ft. strip of land; and on December 10, 1955, an injunction was issued enjoining the City from making any claim to the 42 ft. strip. On February 17, 1956, the chancery court entered a decree confirming the appellees' title to the 42 ft. strip. On January 22, 1957, the appellees filed another suit in the chancery court seeking to amend the plat of the Magnolia Park Subdivision so as to include the omitted strip of land. The appellant and several individuals and lending agencies were made parties defendant to that suit. The appellant, however, took no part in the litigation, and on August 17, 1957, the suit was dismissed with prejudice at the cost of the appellees.

On September 11, 1957, the appellees, Jim Edd Bush and his wife, Mrs. Elma Bush, as plaintiffs in the court below, filed their declaration in the circuit court against the appellant, City of Laurel, as defendant, seeking to recover damages for the alleged trespass on the 42 ft. strip of land involved in the above mentioned confirmation suit, and for the alleged interference with their use and occupancy of said strip of land. The defendant in its answer denied the material allegations of the declaration; and in defense of said action set forth in detail the facts relating to the above mentioned boundary line controversy and the suits filed by the plaintiffs in the chancery court for confirmation of their title to

said strip of land and for the granting of the above mentioned injunction; and as separate matters of defense the defendant pleaded in bar of the plaintiffs' action the one-year statute of limitations prescribed in Section 732, Mississippi Code of 1942. The defendant also pleaded in bar of said action that the plaintiffs had failed to assert any claim for damages in any of the prior suits and were therefore barred of their right to assert such claim under the doctrine of res judicata, and that the declaration failed to state a cause of action or any recoverable damages. The trial judge found that the plaintiffs in their prior suits had split their cause of action and that their claim for damages was res judicata, and a judgment was entered dismissing the suit for damages. From that judgment the plaintiffs prosecuted an appeal to this Court; and on October 13, 1958, this Court reversed the judgment of the lower court on the ground that the trial judge had erred in sustaining the defendant's plea of res judicata. The Court also held on that appeal that the plaintiffs' suit was not barred by the one-year statute of limitations, Section 732, Code of 1942, Recompiled; and that the dismissal order of the trial judge could not be supported on the ground that the plaintiffs' declaration stated no cause of action, or that it failed to allege any recoverable damages. This Court in its opinion stated that the defendant should have filed a motion for a bill of particulars or to require the plaintiffs to make their declaration more specific as to the damages claimed; that the general allegation that the defendant had committed a trespass in going upon the land, if proved on the trial, would entitle the plaintiffs to recover at least nominal damages.

The record shows that, after the remand of the case to the lower court, the defendant's attorneys filed a motion for a bill of particulars as to the nature and kind of damages upon which the plaintiffs based their demand, and that the plaintiff in response to that motion, on January 14, 1959, filed their bill of particulars

in which they claimed damages in the total sum of $8,475, which included alleged loss of profits on the sale of lots, cost of surveying and preparing plats and conveyances, attorney's fees incurred by the plaintiffs in their suits to confirm title, to obtain an injunction, and to alter plats, and compensation for time and effort expended by the plaintiffs in the prosecution of said suits; and amounts expended for expert witness fees and court costs.

The case was tried before a jury at the January 1959 term of the court. The plaintiffs introduced in evidence the record in the three chancery court suits mentioned above, and several witnesses testified for the plaintiffs. The plaintiff, Jim Edd Bush, testified that he acquired title to the tract of land included in the Magnolia Park Place Subdivision about 16 years before the trial; that the tract of land contained between 11 and 12 acres; and that he had platted the land as a subdivision in 1954, and had presented his plat to the City of Laurel for its approval, "and they turned it down." Bush stated that the City had the north line of the Mason Memorial Park tract of land run out by a surveyor, and as a result of that survey the City claimed the 40 ft. strip of land lying between the old fence and the new line which was located about 40 feet north of the old fence line which had been generally accepted as the division line between the SE¼ of the SE¼ and the NE¼ of the SE¼ of Section 30, Township 9 North, Range 11 West for almost half a century. Bush stated that the City turned down the first plat which he had made of his subdivision, and that he had another plat made, leaving off the 40 ft. strip and reducing the depth of the lots bounded on the south by the park property from 190 feet to 150 feet; that the replatting of the lots reduced their sales value, and when he sold the lots he lost a lot of money on them; that he had to employ an attorney to establish his title to the 40 ft. strip; and that he paid his attorney $250. Bush was asked why he sold the lots before he established

his title. His answer was that he owed money. He stated that he spent much time running back and forth between his lawyer and the city authorities, and after the court had quieted his title the city tax collector advised him that it was necessary for him to have a new plat prepared showing the 40 ft. strip as a part of the subdivision. He stated that he paid the court costs as a result of the suits that he had filed, and that he had made many trips to court.

On cross-examination Bush stated that he saw Mr. Tom Carter, who ran the line for the City, and his boy survey the line and place the markers along through the property from Seventh Avenue to Sixth Avenue. He saw them drive the stakes; he did not consent to the making of the survey, but he did not indicate to them that he did not wish the survey to be made. The surveyor and his helper did not cut any trees—''just shrubbery * * * undergrowth.'' Bush was asked whether they damaged the land. His answer was, ''Well, other than walk around on it and stuff like that, they cut a little bit of shrubbery, and broke up some of it, but - - -.'' Bush thought they were out there about three times. He never did make any protest about them coming out and making the survey. Bush stated that the City of Laurel never did do anything about possessing the 40 ft. strip. They just turned the plan down—''sent surveyors out there and had it surveyed off and put down their markers.'' He admitted that to his knowledge the City never made any use of the strip of land. They put down five or six stakes along the 600 ft. line. Bush stated that there were six lots next to the city park; that he sold two of the lots for $1500 each, but would have been able to sell them for $2,000 each, if he had been able to convey title to the 40 ft. strip; that he sold two other lots for $500 less than he had been offered for the lots before it was learned that he had no record title to the 40 ft. strip; and that he finally sold another lot for $1600 after he got the boundary line controversy settled.

Harold Elliott testified that he tried to buy a lot from Bush, and that he offered Bush $1800 for the lot, but the purchase was never consummated for the reason that he could not get clear title to the lot. Warren McCreight testified that he bought Lot 14 from David Moffett, but he understood that it still belonged to Edd Bush at the time he purchased the lot. A house had been built on the lot, and the purchase price of the lot, which was included in the price of the house, he understood, was $1500. The lot ran back to the old fence at the time of the trial. He expected the lot to run back to the old fence at the time he purchased it, although it did not run back to the old fence at that time. After he bought the lot and the boundary line controversy had been settled he pressed the plaintiff's attorney to get him a deed for the rest of the lot, although he was using the other 40 feet at that time. He paid nothing extra for the 40 feet. Billy Wood testified that he made a down payment on a lot which he had offered to buy for the sum of $1500. The purchase, however, was never consummated. When he went back to complete the transaction he found that the lot was 40 feet shorter in length than he had expected it to be. He asked that the down payment be returned to him, and the down payment was returned to him.

L. O. White, county surveyor of Jones County, testified that he made the survey and prepared the subdivision plat of the Magnolia Park Place Subdivision for Mr. Bush. In making the survey he found that the true line of the 40-acre tract in which the subdivision was situated lay 42.85 feet north of the fence line. The strip between the fence line and the 40-acre line was in another 40-acre tract. He stated that when he found that out, he had to take the 42 ft. strip out of the plat which he had made, and Mr. Bush had him remake the plat of the land in the NE¼ of the SE¼ of Section 30. On cross-examination White stated that when he went out to make the survey with Tom Carter Mr. Bush was

present and consented to his making the survey, and the City paid White for making the survey.

The plaintiffs' attorney read to the jury the letter which the city attorney had written to the Mayor on June 29, 1955, in which the city attorney stated that he had examined the affidavits furnished by the Bushes relating to adverse possession of the 40 ft. strip lying north of the fence dividing the Bush property from the Mason Memorial Park property, and that after considering the resolution passed by the Mayor and Board of Commissioners on December 17, 1951, regarding the park property and the applicable statutes, he did not believe that the City could legally execute any kind of instrument conveying the strip of land.

At the conclusion of the testimony offered on behalf of the plaintiffs the defendant's attorney moved that the court exclude the evidence offered by the plaintiffs concerning the defendant's rejection of the first plat referred to by the plaintiffs in their testimony. That motion was sustained. The defendant's attorney then moved that the court exclude the evidence offered by the plaintiffs relating to expenses incurred by the plaintiffs for surveying and the preparation of plats and deeds of conveyances; that the court exclude the evidence offered by the plaintiffs relating to alleged loss of profits on the sale of the lots; and that the court exclude the evidence offered by the plaintiffs as to attorney's fees paid in prior litigation. Those motions were overruled. The court, however, excluded the evidence offered by the plaintiffs concerning the payment of court costs and expenses incurred in other litigation between the parties. The defendant offered no evidence on its own behalf.

 █ The first point argued by the appellants' attorneys as ground for reversal of the judgment of the lower court is that the court erred in granting to the plaintiffs the following instruction which appears on Page 14 of the record:

"The court instructs the jury for the plaintiffs that if you believe from a preponderance of the evidence that the plaintiffs sustained actual damages as a proximate result of the defendant's trespass, you may consider such items which you believed to have been proved by a preponderance of the evidence concerning the loss of money on the sale of lots; the loss of interest on the purchase price of lots, the sales of which were not completed due to the title dispute for the period of time as shown to have been lost, attorney fees for the recovery of the subject land; surveying fees expended in connection with the litigation caused by the trespass, expended as a proximate result from the trespass of the defendant."

We think the court erred in granting the above mentioned instruction.

The plaintiffs were entitled to recover no more than nominal damages for the alleged trespass committed by the surveyor who ran the line for the City. No actual damage was proved. The plaintiffs' own surveyor had found that the 42 ft. strip of land was not included in the calls of the plaintiffs' deed, but was included in the calls of the defendant's deed. Bush was present at the time the City's surveyor and his helper ran the line, and Bush interposed no objection to the surveyor running the line. Bush, as we have seen, was asked whether they damaged the land, and his answer was that they walked around on it and cut a little bit of shrubbery. But Bush did not state what kind of shrubbery they cut, or whether it had any market value or not. Bush stated that the surveyors were out there about three times, and that he never made any protest about them coming out there. There is no basis in the proof for the contention made by the appellees' attorney in his brief that the strip of land was taken or damaged by the City for public use, within the meaning of Section 17 of the State Constitution. The appellees in their bill to con-

firm their title to the 42 ft. strip, which was filed on November 11, 1955, stated that the lands at that time were not in any occupancy adverse to the complainants, and that "in fact said lands are now occupied only by complainants, as they have been for the past several years."

■■ The plaintiffs were not entitled to recover damages on account of loss of money on the sale of the lots, or loss of interest on the purchase price of the lots. The plaintiffs' alleged loss of money on the sale of lots was due to no wrong done them by the City of Laurel, but was due to the plaintiffs' own acts in offering the lots for sale before obtaining confirmation of their title to the strip of land which was not included in the calls of their deed. ■■ ■ Neither were the plaintiffs entitled to recover attorney's fees or expenses incurred in the suit to quiet their title to the 42 ft. strip of land. Apart from the sums allowable and taxed as costs, there can, as a general rule, be no recovery as damages of the costs and expenses of litigation or expenditures for counsel fees.

■■ ■ The general rule relating to the right of the plaintiff to recover attorney's fees and expenses of litigation is stated in 15 Am. Jur., p. 550, Damages, par. 142, as follows:

"As a general rule, in the absence of any contractual or statutory liability therefor, attorneys' fees and expenses incurred by the plaintiff or which the plaintiff is obligated to pay, in the litigation of his claim against the defendant, aside from usual court costs, are not recoverable as an item of damages, either in an action ex contractu or an action ex delicto. Nor are attorneys' fees and other expenses of former litigation, particularly suits prosecuted by the plaintiff against the defendant, recoverable in a subsequent action."

In Cooper v. United State Fidelity & Guaranty Co., 186 Miss. 116, 188 So. 6, the Court said:

"The rule in this state is that, in the absence of statute, attorney's fees are not recoverable, unless the facts are of such gross or willful wrong as to justify the infliction of punitive damages. Yazoo & M. V. Railroad Co. v. Ice & Power Co., 109 Miss. 43, 67 So. 657; Kalmia Realty & Ins. Co. v. Hopkins, 163 Miss. 556, 566, 141 So. 903."

■■■ Neither were the plaintiff's entitled to recover as damages the surveyor's fees expended by them in connection with the establishment of their subdivision or in connection with their suit for confirmation of their title to the 42 ft. strip of land which lay outside the calls of their deed.

The defendant requested instructions that the jury should not consider as an element of damages any alleged loss of profits on the sale of lots on the south side of Magnolia Park Place Subdivision by the plaintiffs; that the jury should not consider as an element of damages attorney's fees paid in other litigation by the plaintiffs, or any attorney's fees to be paid in this litigation; and that the jury should not consider as elements of damages costs incurred by the plaintiffs in surveying or in having survey work done. Each of those instructions were refused. We think that each of those instructions should have been given.

■■ ■ The plaintiffs, as we have stated, were entitled under the proof to recover only nominal damages. ■■ ■ "Nominal damages are usually considered as a small and trivial sum awarded for a technical injury due to a violation of some legal right, and as a consequence of which some damages must be awarded to determine the right." The Southland Co. v. Aaron, et ux., 224 Miss. 780, 80 So. 2d 823.

For the errors mentioned above the judgment of the lower court must be reversed, and a judgment will be entered here in favor of the appellees for nominal damages in the sum of $50.

The costs of this appeal will be taxed against the appellees.

Reversed and judgment rendered.

*McGehee, C.J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.