# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CT-00087-SCT

*LORI NICHOLS*

*v.*

*DAVID WAYNE FUNDERBURK*

## ON WRIT OF CERTIORARI

DATE OF JUDGMENT:                   12/21/2001
TRIAL JUDGE:                        HON. JACQUELINE ESTES MASK
COURT FROM WHICH APPEALED:          ITAWAMBA COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:            ANGELA NEWSOM SNYDER
                                    JOHN DAVID WEDDLE
ATTORNEY FOR APPELLEE:              PRO SE
NATURE OF THE CASE:                 CIVIL - DOMESTIC RELATIONS
DISPOSITION:                        AFFIRMED - 09/23/2004
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Lori Nichols filed a complaint against David Wayne Funderburk for paternity, child support and equitable division of property. The Itawamba County Chancery Court entered a final judgment declaring David as the natural father of the two children, granting custody of the children and child support to Lori and denying Lori's request for equitable division of property. Lori appealed the chancellor's decision to the Court of Appeals which affirmed the judgment of the chancellor. *See **Nichols v. Funderburk***, 2002-CA-00087-COA, 2003 WL 22481017 (Miss. Ct. App. 2003). Lori's motion for rehearing was denied, and we granted her petition for writ of certiorari. Finding that the chancellor was correct in finding that there

was no partnership formed between Lori and David and no property acquired through joint efforts, we affirm the judgments of both the Court of Appeals and the Itawamba County Chancery Court.

**FACTS**

¶2.     In approximately 1989, when Lori Nichols was sixteen years old and David Wayne Funderburk was twenty-five years old, the couple began living together. During their cohabitation, which lasted until 2001, two children were born. Lori and David never married.

¶3.     In 1989 David purchased a house, with the deed listing him and his mother as joint owners. David paid the monthly mortgage, and all of the bills were in David's name except for the cable. In 1991 David's father turned over the family business to David (Home Town Deli), and David took out a $25,000 loan to remodel the restaurant. David leased the business the first seven years, and he began operating the restaurant the last three years. Under David's management, the restaurant was open every Thursday, Friday and Saturday night. Lori began working for David one year after he started managing the restaurant. David claims he paid Lori $500 per week; however, Lori argues she was only paid $240 per week. All of David's employees were paid in cash. In 1997 David's mother gave him an apartment complex (The Mustang Apartments).

¶4.     Although Lori claims she was David's business partner, both parties testified that neither David nor his parents ever intended for Lori to have a major role in their family businesses. David and Lori had separate checking accounts. Lori was not authorized to write checks on any of David's personal or business accounts. Most importantly, Lori's name was never added to the title of any of David's property. In 2001 when the couple separated, Lori left the home and took one-half of the furniture.

2

¶5. On June 5, 2001, Lori filed a complaint for paternity, child support and an equitable division of property against David. Finding David to be the natural father of the two children, the chancellor awarded primary custody to Lori and ordered David to pay $425 per month in child support. The chancellor, however, denied Lori's request for an equitable distribution of property finding there was "no legal remedy existing at this time to compensate her for the 14 years that she chose to cohabitate [sic] without the benefit of marriage." The Court of Appeals, on a 5-5 decision, affirmed the chancellor, finding insufficient evidence that the parties acquired property through their joint efforts. *Nichols*, *4. The court distinguished prior Mississippi case law finding the couple to have never held themselves out to be married. *Id.* at *3. The court determined that Lori was compensated weekly for her services as an employee of the restaurant. *Id.* at *5. The court also held that even though Lori may have managed the restaurant and contributed to the business of the apartment complex, she did not own those assets nor did David ever intend for her to be his business partner in those endeavors. *Id.* at *4. Therefore, the Court of Appeals held that Lori was not entitled to any division of property. *Id.* at *5.

¶6. Then-Judge Lee, joined by then-Presiding Judge King and Judges Myers and Thomas and by Judge Bridges in part, dissented arguing that although the chancellor acknowledged Lori's contributions to the restaurant, his single point of contention was that Lori's name was not on the title to the restaurant business. *Id.* at *8. Judge Lee determined that the chancellor erred in concluding that Lori's weekly pay precluded her from qualifying as a partner in David's business. *Id.* Judge Lee argued that although David paid the monthly mortgage payments on the home, Lori purchased all the furniture and took care of the house, which appreciated in value during their cohabitation from $16,000 to $55,000. *Id.* at *7-8. Judge

Lee further determined that "[t]he evidence and testimony showed that Lori was an integral part of the restaurant's operation for many years, so much so that I find her efforts were 'joint' with those of David as to entitle her to equitable distribution of proceeds from the sale of the business." *Id.* at *8.

## DISCUSSION

¶7.     This Court's standard of review regarding determinations of a chancellor is well-established.

> This Court will reverse a chancellor only when he is manifestly wrong. *Hans v. Hans*, 482 So.2d 1117, 1119 (Miss. 1986); *Duane v. Saltaformaggio*, 455 So.2d 753, 757 (Miss. 1984). A chancellor's findings will not be disturbed unless he was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. *Tinnin v. First United Bank of Miss.*, 570 So.2d 1193, 1194 (Miss. 1990); *Bell v. Parker*, 563 So.2d 594, 596-97 (Miss. 1990). Where there is substantial evidence to support his findings, this Court is without the authority to disturb his conclusions, although it might have found otherwise as an original matter. *In re Estate of Harris*, 539 So.2d 1040, 1043 (Miss. 1989). Additionally, where the chancellor has made no specific findings, we will proceed on the assumption that he resolved all such fact issues in favor of the appellee. *Newsom v. Newsom*, 557 So.2d 511, 514 (Miss. 1990). The chancellor's decision must be upheld unless it is found to be contrary to the weight of the evidence or if it is manifestly wrong. *O.J. Stanton & Co. v. Mississippi State Highway Comm'n*, 370 So.2d 909, 911 (Miss. 1979).

*In re Estate of Johnson*, 735 So.2d 231, 236 (Miss. 1999). *See also* *Madison County v. Hopkins*, 857 So.2d 43, 47 (Miss. 2003); *Adoption of C.L.B. v. D.G.B.*, 812 So.2d 980, 985 (Miss. 2002). However, the chancery court's interpretation and application of the law is reviewed under a de novo standard. *Tucker v. Prisock*, 791 So.2d 190, 192 (Miss. 2001); *In re Carney*, 758 So.2d 1017, 1019 (Miss. 2000).

¶8.     Lori argues that the Court of Appeals did not properly apply Mississippi case law which would have allowed for a division of property to award Lori a fair share of the assets accumulated during the couple's relationship. Lori contends that Mississippi precedent allows for equitable division of property

in cohabitation cases where one of the cohabitants contributes not only domestically, but also through labor directly related to the business or property acquired during cohabitation. The couple's home was purchased in 1989, the year the cohabitation began. The family restaurant was purchased in 1991 and was operated by David in 1997. The apartments were purchased in 1999. Lori contends that she contributed domestically to the couple's home which significantly appreciated in value during their relationship. Lori also played a significant role in managing the family restaurant and occasionally worked at the apartment complex.

¶9. The Court of Appeals found that unlike all other cohabitation cases in Mississippi, Lori and David never married nor did they ever maintain that they were married. *Nichols* at *3. The court found that the couple "merely chose to cohabit without the benefit of marriage." *Id.* at *5. The court further held that David did not intend for Lori to have any ownership interest in either the restaurant or the apartments as evidenced by his paying her for services rendered. *Id*. This was also evidenced by testimony of both parties. Lori testified that while she believed she was David's business partner, David had informed her that he and his parents did not want her to have anything to do with their family businesses. Therefore, he never intended to add her name to any of the deeds. Lori also testified that there were never any written agreements between herself and David regarding the businesses. Lori stated that she believed there to be some type of marriage between David and her because they lived together and had children. However, Lori also testified that she was content with her situation because she had known for several years that David was never going to marry her.

¶10. Equitable division of property is a concept of our marital and domestic laws. A marital relationship may be created in conformity with applicable law, Miss. Code Ann. §§ 93-1-1 to -25 (Rev. 1994 & Supp.

5

2003). Mere cohabitation does not vest marital rights. *Pickens v. Pickens*, 490 So.2d 872, 875 (Miss. 1986). This Court has recognized an exception for equitable division of property where there was a marriage or the appearance of a marriage when no legal marriage actually existed. *See id.* at 875; *Taylor v. Taylor*, 317 So.2d 422, 423 (Miss. 1975).

¶11. In *Pickens*, this Court determined that a woman was entitled to equitable distribution for domestic services rendered. The Pickenses were once married, but chose to continue living together after they divorced. This Court held that:

> Where parties such as these live together in what must at least be acknowledged to be a partnership and where, through their joint efforts, real property or personal property, or both, are accumulated, an equitable division of such property will be ordered upon the permanent breakup and separation.

490 So. 2d at 876. In *Taylor*, this Court again held that a putative wife was entitled to the equitable distribution of property upon separation. This Court held that:

> The facts in this case demonstrate without question that the chancellor did what a decent regard for the sensibilities of humanity demanded. These people lived together and shared the vicissitudes of life for eighteen years. The separation cast her adrift just as surely as if she had been his lawful wife. The chancellor appears to have decided that the strict letter of the law ought not to require him to ignore that he was dealing with human beings.

317 So. 2d at 423. In each of these cases, the couples had all either been married or contended to have married. In the case sub judice, Lori and David never married or purported to have married.

¶12. The chancellor correctly relied upon the legal standard of *Davis v. Davis*, 643 So. 2d 931 (Miss. 1994). In *Davis*, this Court determined that Elvis Davis was not entitled to an equitable distribution of her companion's business because she never participated in his business. Her companion also lavishly showered Elvis with gifts and did, in fact, propose marriage, but Elvis refused. At the time of the complaint, Elvis was

6

living in a new home and driving a new car, all purchased by her previous companion. Here, Lori was paid for her services rendered at David's restaurant as he paid all of his other employees. David never intended to marry Lori, and she was aware of his decision. Lori was also aware that David never intended to make her a partner in his business ventures. Therefore, the chancellor and the Court of Appeals were correct in finding that there was no evidence that Lori and David entered into a partnership or acquired assets through their joint efforts.

## CONCLUSION

¶13.     The Court of Appeals and the chancellor were correct in finding that Lori and David's relationship was more comparable to the relationship in *Davis* than those in *Taylor* and *Pickens*. When a man and woman cohabit without the benefit of marriage, they do so at their own peril insofar as resolving real and personal property disputes upon their separation.  In this instant case, because the facts do not support a finding of Lori and David entering into a partnership or acquiring assets through their joint efforts, we find that Lori is not entitled to any distribution of property solely owned by David.  Therefore, we affirm the judgments of the Court of Appeals and the Itawamba County Chancery Court.

¶14.     **AFFIRMED**.

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.  DIAZ, J., NOT PARTICIPATING.**