917 So.2d 125 (2005)
Jackie PATTERSON and Reba Patterson, Appellants/Cross-Appellees
v.
Jack HOLLEMAN, Appellee/Cross-Appellant.
Jack Holleman, Appellant
v.
Jackie Patterson and Reba Patterson, Appellees.
Nos. 2003-CA-01902-COA, 2004-CA-00790-COA.
Court of Appeals of Mississippi.
December 13, 2005.
*128 T.K. Moffett, Oxford, attorney for appellants.
Lawrence Lee Little, Tupelo, attorney for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
CHANDLER, J., for the Court.
¶ 1. The Chancery Court of Lee County awarded Jackie and Reba Patterson damages for Donald and Margaret Sparks's trespass upon an approximately one-quarter-acre strip of land in Lee County. In this appeal, the Pattersons challenge the adequacy of the damage award. Holleman cross-appeals and asserts that the Pattersons were barred from challenging the trespass and that the Sparks have right-of-way access over the quarter-acre.
¶ 2. We affirm the decision of the chancery court, except that we reverse and remand for a determination of attorney's fees and fact-findings to be made considering the factors enumerated in Rule 1.5 of the Mississippi Rules of Professional Conduct and in McKee v. McKee, 418 So.2d 764, 767 (Miss.1982).

FACTS AND PROCEDURAL HISTORY
¶ 3. The Pattersons lived in Illinois and wanted to buy retirement property in Mississippi. On March 26, 1985, the Pattersons bought 8.27 acres in Lee County near the border of Lee and Itawamba Counties. On March 4, 1996, the Pattersons contracted to purchase adjoining acreage. The Pattersons purchased the adjoining acreage by warranty deed on October 29, 1999.
¶ 4. Together, the Pattersons' acquisitions formed a parcel of sixty acres situated entirely within Lee County. The Lee-Itawamba county line formed the eastern border of the Pattersons' parcel. Lee County Road 1597 ran north-south through the Pattersons' parcel near the county line. The road ran roughly parallel to the county line, and a narrow strip of the Patterson's property lay between the road and the county line. A house the Pattersons planned to use as a retirement home was located on the west side of the road.
¶ 5. In April 1998, Jack Holleman bought eighty acres in Itawamba County from Bonnie Marie Beachum. The acreage was situated across Lee County Road 1597 from the Pattersons. Holleman sold the acreage to Elizabeth Crosthwait. The acreage was divided into eight ten-acre residential lots, and Holleman agreed to act as a broker to find buyers for the lots. The four eastern lots had ingress and egress from Section Line Road in Itawamba County. But, the four western lots *129 relied upon Lee County Road 1597 for ingress and egress. When Holleman obtained a survey of the lots, the surveyor, Chris Barker, informed him that the western lots did not have ingress and egress from Lee County Road 1597 because a strip of property blocked access to the road. Thus, the lots were landlocked. This reality was reflected by the survey.
¶ 6. On December 31, 1998, the Sparks bought one of the four landlocked lots from Crosthwait. The Sparks had a copy of the survey, but Holleman told the Sparks that their property line extended all the way to Lee County Road 1597.[1] Accordingly, the Sparks cleared the trees from three acres fronting Lee County Road 1597 in preparation for situating a mobile home facing the county road. They planned to use Lee County Road 1597 for ingress and egress to their residence.
¶ 7. In May 1999, Jackie Patterson visited Mississippi and observed that someone had cleared a quarter-acre of his strip of property on the east side of Lee County Road 1597. Upon investigation, Jackie learned that the Sparks had cleared the quarter-acre in order to place a mobile home upon their ten-acre tract. On May 25, 1999, Jackie sent the Sparks a letter notifying them that he owned the property between their ten acre tract and Lee County Road 1597 and denying the Sparks permission to use the property. That day, the Sparks filed a complaint seeking a temporary restraining order in the Chancery Court of Lee County.
¶ 8. The chancery court entered a temporary restraining order enjoining the Pattersons from interfering with the Sparks's use of the quarter-acre. Thus unimpeded, the Sparks moved their mobile home across the quarter-acre and onto their lot. They also built a driveway leading from their home to Lee County Road 1597. On August 13, 1999, they obtained and recorded a deed from Bonnie Marie Beachum that quitclaimed to the Sparks certain property east of the centerline of Lee County Road 1597. This deed constituted a cloud on the Pattersons's title because it purported to convey the quarter-acre to the Sparks.
¶ 9. On October 11, 1999, the court entered an order dissolving the temporary restraining order and granting the Pattersons permission to file a complaint for damages. On March 11, 2000, the Pattersons filed a complaint against the Sparks requesting a permanent injunction against the Sparks' use of the quarter-acre, damages, attorney's fees, and costs. Later, the Pattersons amended their complaint to request damages for intentional trespass, removal of dirt and trees, all other damage to the property, and punitive damages.
¶ 10. In their amended complaint, the Pattersons added as defendants Tombigbee Electric Power Association (Tombigbee), which had strung electric lines over the quarter-acre to power the Sparks's home; Ken Dye d/b/a Ken Dye Construction, which had cleared and graded the property for the Sparks; John Doe, an employee of Ken Dye; and Willie Smith, whose company had moved the Sparks's mobile home onto their ten acre lot. Tombigbee was dismissed upon an agreement that it would comply with any future orders of the court to remove its electric lines from the Pattersons' property. Ken Dye was dismissed by agreement. The Pattersons did not proceed against Smith. The Sparks filed a third party complaint *130 against Holleman and Crosthwait; Crosthwait was dismissed. At one point, Holleman was dismissed from the case without prejudice, but was later made a party defendant.
¶ 11. After a trial, Chancellor John C. Ross found that the Pattersons owned the quarter-acre and that the Sparks were not entitled to an easement over the quarter-acre. Chancellor Ross found that the Beachum quitclaim deed did not convey title to the quarter acre because Beachum had not owned the property she sought to convey. Chancellor Ross set aside the Beachum deed and issued an injunction perpetually enjoining the Sparks from crossing the quarter-acre. He also awarded the Pattersons damages for the removal of trees pursuant to Mississippi Code Annotated section 95-5-10(1) and (2) (Rev. 2004) as well as other compensatory damages, totaling $5,915.88, expert witness and survey fees of $2,500, attorney's fees of $15,000, and costs. Chancellor Ross assessed these damages against the Sparks, but ordered Holleman to fully indemnify the Sparks for all damages assessed against them. Chancellor Ross also ordered Holleman to provide the Sparks with ingress and egress to their property within thirty days. Chancellor Ross entered the order on December 27, 2002. Then, the Pattersons moved for a new trial or an amendment of the judgment as to damages. Holleman moved for a new trial. Chancellor Jacqueline Estes Mask was assigned to the case upon Chancellor Ross's retirement. On August 4, 2003, Chancellor Mask denied the post-trial motions.
¶ 12. Both the Pattersons and Holleman appealed; their appeals were consolidated. See M.R.A.P. 3(b). During the pendency of the appeals, the Pattersons filed successive motions for a citation of contempt against Holleman due to his continued failure to provide the Sparks with alternative ingress and egress to their property as ordered by Chancellor Ross. The court ordered Holleman to pay contempt fines.
¶ 13. On appeal, the Pattersons argue that the chancery court erred (1) in failing to award the full amount of compensation requested by the Pattersons; (2) in failing to award the full amount of the Patterson's costs and expenses; (3) in failing to award sufficient punitive damages; and (4) in failing to award the full amount of attorney's fees incurred by the Pattersons. Holleman cross-appeals, arguing that (1) the Pattersons should not be permitted to claim ownership of the quarter-acre since they did not hold record title to it at the time of the trespass; (2) the Sparks are entitled to use their driveway crossing the quarter-acre because it is within the county road right of way; and (3) since the Sparks are entitled to use the driveway to access their property, all contempt sanctions against Holleman should be reversed. The Sparks have elected not to file a brief. See M.R.A.P. 31.

STANDARD OF REVIEW
¶ 14. This Court adheres to a well-established, limited standard of review of the decisions of a chancellor. Nichols v. Funderburk, 883 So.2d 554, 556(¶ 7) (Miss. 2004). We will reverse only when the chancellor's determinations were manifestly wrong or clearly erroneous, or when the chancellor applied an incorrect legal standard. Id. If substantial evidence supports the chancellor's fact-findings, this Court must affirm even if, as an original matter, we would have found otherwise. Id. The chancellor's "interpretation and application of the law is reviewed under a de novo standard." Id. (citing Tucker v. Prisock, 791 So.2d 190, 192(¶ 10) (Miss.2001); In re *131 Carney, 758 So.2d 1017, 1019(¶ 8) (Miss. 2000)).

LAW AND ANALYSIS

I. WHETHER THE CHANCERY COURT ERRED IN FAILING TO AWARD FULL DAMAGES TO THE PATTERSONS FOR THE RESTORATION OF THEIR PROPERTY.
¶ 15. At the trial, several witnesses testified that trees and brush had been present on the quarter-acre before the Sparks cleared it. Jackie Patterson stated that this quarter-acre strip of trees had provided a privacy screen from any development across the road from his house. Concerning the value of their loss, the Pattersons proffered the testimony of Clay Stewart, an expert in the fields of landscape architecture and construction. Stewart opined that the cost of restoring the quarter-acre to its former condition would be $226,500. This amount reflected the wholesale market value of mature replacement trees, freight, and labor to install the trees, but did not include replacing dirt that had been removed. Stewart stated that some topsoil likely would be required to plant the trees. He determined the number, types and sizes of trees needed for replacement by examining the trees on a 400 square foot parcel adjacent to the quarter-acre. Jackie had said the trees on that parcel were comparable to the trees that had been on the quarter-acre.
¶ 16. Charles Williams, a forestry expert, testified on behalf of Holleman. Williams calculated the timber value of the trees cleared from the quarter-acre by examining comparable trees in the area. He stated that the per-acre value of the timber that had been on the quarter-acre was $415.88. This amount did not reflect the cost of replacing the cleared trees with mature trees, but instead reflected the fair market value of the cleared trees had they been harvested and sold as timber.
¶ 17. Chancellor Ross awarded the Pattersons $5,915.88 in damages for the Sparks's trespass to the quarter-acre. Chancellor Ross rejected Stewart's $226,500 valuation and accepted Williams's testimony that one acre of the land would have had a timber value of $415.88. Though he recognized that the property was only a quarter-acre, Chancellor Ross awarded the Pattersons the timber value of a full acre. In calculating this award, Chancellor Ross found that the highest and best use of the quarter-acre was for privacy. Further, Chancellor Ross found
that because Defendant Sparks had met with Defendant Holleman and examined the Barker survey, and because Defendant Holleman had been told by Barker that there was a potential access problem to the Sparks property, the actions in cutting the trees were done willfully and in reckless disregard for the rights of the Plaintiffs, and therefore the [c]ourt assesses the further penalty provided for in Section 2 of § 95-5-10 of the Mississippi Code of 1972, Annotated, as amended of $55.00 for every tree 7" or more in diameter and $10.00 for every tree less than 7" in diameter at a height of 18" above ground level. The [c]ourt accepts the testimony of Stewart regarding the number of trees in a typical area and finds that the property had approximately 390 trees as herein stated and finds that 30 of those trees were larger than 7" in diameter and awards $55.00 for every tree for a total of $1,650.00 and 360 trees at $10.00 per tree for $3,600.00 for a total of $5,250.00 plus $415.88 for a total of $5,665.88 together with $250.00 for reforestation. The Pattersons are hereby granted a judgment against the Sparks in the sum of $5,915.88.
*132 ¶ 18. In the order denying post-trial motions, Chancellor Mask found that Chancellor Ross had intended for the $5,915.88 to compensate the Pattersons for the destruction of trees, their loss of privacy, and other intrusion by the Sparks including the construction of a driveway and the placement of a mailbox and utilities. Thus, according to Chancellor Mask's finding, Chancellor Ross's award consisted of statutory damages for the wrongful removal of trees pursuant to section 95-5-10 and actual damages under the common law governing trespass to land.[2] The Pattersons do not contest this finding on appeal.
¶ 19. What the Pattersons do challenge is Chancellor Ross's rejection of their landscaping expert's valuation of $226,500 for restoration of the quarter-acre to its former condition. They contend that the award of the timber value for one acre of land was erroneous because they did not intend to harvest and sell the trees, but instead to use the trees for privacy. The Pattersons argue that they were entitled to compensation for the installation of mature trees that would provide a privacy screen and restore the property to its former state.
¶ 20. The Pattersons rely on Teasley v. Buford, 876 So.2d 1070 (Miss. Ct.App.2004), for their argument that they were entitled to restoration costs. Teasley involved a trespass to land that resulted in the destruction of a hillside, necessitating the construction of a retaining wall to prevent erosion of the landowner's property. Id. at 1082(¶ 31). The trial court gave a jury instruction providing that the measure of actual damages for the trespass was either the difference in the value of the land before the injury and its value after the injury, or the cost of restoring the land to its former condition. Id. This instruction was based, in part, upon the rule that "if the damage to the land is permanent, the measure thereof is usually the difference between the fair market value of the entire tract before the injury and the fair market value after the injury." Harrison v. McMillan, 828 So.2d 756, 770(¶ 43) (Miss.2002) (citing Sun Oil Co. v. Nunnery, 251 Miss. 631, 170 So.2d 24 (1964)). This measure of damages is known as the "before and after" rule. Id. The jury instruction alternatively permitted the jury to award damages for restoration. Restoration damages are appropriately awarded for the destruction of a specific item when "the thing which is destroyed or injured, although a part of, or attached to, the realty, has a distinct value without reference to the realty on which it stands or from which it grows...." Bynum v. Mandrel Indus., Inc., 241 So.2d 629, 634 (Miss.1970). Though not acknowledged by the Pattersons, we observe that a landowner may recover restoration costs pursuant to this rule only if the cost of restoration is less than the diminution in value of the entire property. Harrison, 828 So.2d at 770(¶ 43).
¶ 21. The Pattersons contend that the trees had a distinct value as a privacy screen and, therefore, the chancellor should have awarded the $226,500 cost of restoration. This argument is misplaced. The Pattersons cannot sidestep the statutory provision for damages for a trespass to trees that is clearly applicable to this case. Miss.Code Ann. § 95-5-10 (Rev. 2004). Subsection 95-5-10(1) provides:
If any person shall cut down, deaden, destroy or take away any tree without the consent of the owner of such tree, *133 such person shall pay to the owner of such tree a sum equal to double the fair market value of the tree cut down, deadened, destroyed or taken away, together with the reasonable cost of reforestation, which cost shall not exceed Two Hundred and Fifty Dollars ($250.00) per acre.... To establish a right of the owner prima facie to recover under the provisions of this subsection, the owner shall only be required to show that such timber belonged to such owner, and that such timber was cut down, deadened, destroyed or taken away by the defendant, his agents or employees, without the consent of such owner. The remedy provided for in this section shall be the exclusive remedy for the cutting down, deadening, destroying or taking away of trees and shall be in lieu of any other compensatory, punitive or exemplary damages for the cutting down, deadening, destroying or taking away of trees but shall not limit actions or awards for other damages caused by a person.

(emphasis added).
¶ 22. The Pattersons seek to evade the application of the statutory remedy for the wrongful clearing of trees by arguing that the $226,500 would compensate them for their loss of a privacy screen, not for their loss of trees. The Pattersons cannot avoid the application of the statute by characterizing their loss as one of privacy. The restoration damages sought by the Pattersons are solely for the cost of the purchase and installation of mature trees on the quarter-acre. Thus, the entire $226,500 would compensate the Pattersons for the Sparks's wrongful removal of trees. Section 95-5-10 provides the exclusive remedy for the wrongful removal of trees. Since the Pattersons seek the $226,500 as a remedy for the Sparks's wrongful removal of trees, they are limited to statutory damages under section 95-5-10.
¶ 23. Subsection 99-5-10(1) provides that compensation for the wrongful removal of trees is a sum equal to double the fair market value of the removed trees along with a maximum of $250 per acre for reforestation. Chancellor Ross was within his discretion in accepting Williams's testimony that the fair market value of the removed trees was $415.88 per acre. Double the fair market value for a quarter-acre's worth of trees would have been $207.94. But, the chancellor awarded double that amount, $415.88. Chancellor Mask found that Chancellor Ross's award compensated the Pattersons both for the removal of trees and for the other property destruction perpetrated by the Sparks. We find that Chancellor Ross correctly applied the statute in rendering the damage award for the removed trees. We observe that no party contests Chancellor Ross's award of $250 in reforestation costs for a quarter-acre and do not disturb that award.

II. WHETHER THE CHANCERY COURT ERRED IN FAILING TO AWARD THE FULL AMOUNT OF THE PATTERSONS' COSTS AND EXPENSES.
¶ 24. Chancellor Ross awarded the Pattersons $2,500 in reimbursement for their expert witness fees and survey fees. The Pattersons express satisfaction with this award, but complain that the chancellor erred by failing to also award reimbursement for other costs the Pattersons incurred in bringing the action, including lost wages and travel expenses such as gasoline, hotel charges, car maintenance, and food. These costs totaled $16,888.55.
¶ 25. Chancellor Ross rendered the $2,500 award pursuant to subsection 95-5-10(3), which allows the court, in its discretion, to award "[a]ll reasonable expert witness fees and attorney's fees ... as court costs" in an action for the wrongful cutting *134 down, deadening, destroying, or taking away of trees. Plainly, the statute does not provide for the recovery of travel expenses or lost wages incidental to the litigation. The Pattersons were not entitled to recover these expenses for their trouble in bringing suit for the Sparks's removal of trees from the quarter-acre.
¶ 26. Since the Sparks's trespass to the quarter-acre caused property damage other than the removal of trees, they were not limited to costs allowable under subsection 95-5-10(3), but were eligible to recover any litigation expenses allowable under the common law governing trespass to land. But, "[a]part from the sums allowable and taxed as costs, there can, as a general rule, be no recovery as damages of the costs and expenses of litigation or expenditures for counsel fees" for a trespass to land. City of Laurel v. Bush, 238 Miss. 718, 729, 120 So.2d 149, 155 (Miss.1960). The Pattersons were not entitled to recover the travel expenses and lost wages which they incurred in bringing their lawsuit, and Chancellor Ross was within his discretion pursuant to subsection 95-5-10(3) in awarding the Pattersons $2,500 for expert witness fees and survey fees.

III. WHETHER THE CHANCERY COURT ERRED IN FAILING TO AWARD THE PATTERSONS SUFFICIENT PUNITIVE DAMAGES FOR THE TRESPASS TO THEIR PROPERTY.
¶ 27. As previously stated, the chancellor assessed penalties pursuant to subsection 95-5-10(2) for the Sparks's wrongful removal of the trees. Subsection 95-5-10(2) provides:
If the cutting down, deadening, destruction or taking away of a tree without the consent of the owner of such tree be done willfully, or in reckless disregard for the rights of the owner of such tree, then in addition to damages provided in subsection (1) of this section, the person cutting down, deadening, destroying or taking away such tree shall pay to the owner as a penalty Fifty-five Dollars ($55.00) for every tree so cut down, deadened, destroyed or taken away if such tree is seven (7) inches or more in diameter at a height of eighteen (18) inches above ground level, or Ten Dollars ($10.00) for every such tree so cut down, deadened, destroyed or taken away if such tree is less than (7) inches in diameter at a height of eighteen (18) inches above ground level, as established by a preponderance of the evidence. To establish the right of the owner prima facie, to recover under the provisions of this subsection, it shall be required of the owner to show that the defendant or his agents or employees, acting under the command or consent of their principal, willfully and knowingly, in conscious disregard for the rights of the owner, cut down, deadened, destroyed or took away such trees.
The chancellor found from the conduct of the Sparks and Holleman that the removal of the trees from the quarter-acre was willful and in reckless disregard for the Pattersons's rights, and assessed $1,650 for thirty trees larger than seven inches in diameter and $3,600 for three hundred and sixty trees smaller than seven inches in diameter. The Pattersons do not contest this award, but argue that the court should have assessed further punitive damages against the Sparks.
¶ 28. In support of this argument, the Pattersons rely upon Miller v. Pannell, 815 So.2d 1117, 1122(¶ 18) (Miss.2002), which affirmed a chancellor's award of punitive damages for a trespass upon a finding that the trespasser acted with reckless disregard for the landowner's rights. However, Miller does not assist the Pattersons *135 since the punitive damages in that case were awarded pursuant to 95-5-10(2), and the Pattersons already have received damages pursuant to that subsection. Id. at 1120(¶ 10).
¶ 29. The Pattersons desire punitive damages in addition to the statutory penalty for the willful cutting of another's trees. The chancellor found that the Sparks had caused property damage other than the removal of trees. The Pattersons were eligible for compensation under the common law for that other property damage. Smith v. Parkerson Lumber, Inc., 888 So.2d 1197, 1203(¶ 15) (Miss.Ct.App. 2004). "In the case of a trespass, punitive damages may be awarded if the proof shows that the trespass was willful, grossly negligent or wanton." Teasley, 876 So.2d at 1078(¶ 16). The claimant must prove by clear and convincing evidence that the trespasser's actions were actually malicious or grossly negligent and willful, wanton, or evinced a reckless disregard for the landowner's rights. Miss.Code Ann. § 11-1-65(1)(a) (Supp.2005).
¶ 30. The Pattersons contend that, because the chancellor found that the Sparks and Holleman had cleared the quarter-acre willfully and with reckless disregard for their rights, the chancellor was bound to award punitive damages in addition to the penalty provided by subsection 95-5-10(2). The Pattersons's claim of entitlement to additional punitive damages is without merit. The chancellor never found that the Pattersons had proven by clear and convincing evidence that the Sparks and Holleman caused the other property damage willfully, wantonly, or with reckless disregard for their rights. Miss.Code Ann. 11-1-65(a)(1) (Supp.2005). The chancellor, as the fact-finder, considered the issue of punitive damages and declined to award such damages. See Miss.Code Ann. § 11-1-65(e) (Supp.2005). This decision was well within the chancellor's discretion. There is no right to an award of punitive damages. Miss.Code Ann. § 11-1-65(e) (Supp.2005).

IV. WHETHER THE CHANCERY COURT ERRED IN FAILING TO AWARD THE PATTERSONS THE FULL AMOUNT OF ATTORNEY'S FEES.
¶ 31. The Pattersons claim that they incurred $27,924.84 in attorney's fees. Chancellor Ross awarded them $15,000 in attorney's fees pursuant to subsection 95-5-10(3). That subsection allows the court's discretionary assessment of reasonable attorney's fees as court costs in a successful suit for the wrongful removal of trees. Miss.Code Ann. § 95-5-10(3). On appeal, the Pattersons argue that the chancellor erred by failing to award the full cost of their legal representation. They request the $12,924.84 difference between their full legal fees and the attorney's fees awarded by the chancellor.
¶ 32. The determination of an amount constituting a reasonable attorney's fee is within the sound discretion of the trial court. Mauck v. Columbus Hotel Co., 741 So.2d 259, 269(¶ 32) (Miss.1999). "This Court will not reverse the trial court on the question of attorney's fees unless there is a manifest abuse of discretion in making the allowance." Id. (quoting Deer Creek Const. Co., Inc. v. Peterson, 412 So.2d 1169, 1173 (Miss.1982)). "[t]he reasonableness of an attorney's fee award is determined by reference to the factors set forth in Rule 1.5 of the Mississippi Rules of Professional Conduct" and in McKee v. McKee, 418 So.2d 764, 767 (Miss.1982). BellSouth Pers. Commc'n, LLC v. Bd. of Supervisors of Hinds County, 912 So.2d 436, 447(¶ 37) (Miss.2005) (quoting Browder v. Williams, 765 So.2d 1281, 1288 (Miss.2000)). Rule 1.5(a) provides that:

*136 A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.
The determination of a reasonable fee also should take into consideration the "relative financial ability of the parties." McKee, 418 So.2d at 767.
¶ 33. The trial court must support an award of attorney's fees with factual determinations as to the reasonableness of the fee award. BellSouth, 912 So.2d at 447(¶ 37). The award should be supported by the evidence and should not be "plucked out of the air." Browder, 765 So.2d at 1287-88(¶ 34) (quoting Dynasteel Corp. v. Aztec. Indus., Inc., 611 So.2d 977, 986 (Miss.1992)). The absence of any factual determinations as to the reasonableness of the fee award "would obligate this Court to make an original reasonableness determination and, in so doing, deprive us of our proper judicial function as a reviewing appellate body." BellSouth, 912 So.2d at 448(¶ 37). Accordingly, this Court previously has reversed and remanded for the trial court to make factual determinations pursuant to Rule 1.5 concerning an award of attorney's fees made pursuant to subsection 95-5-10(3). Smith, 888 So.2d at 1207(¶ 33).
¶ 34. At the trial on June 26, 2002, Chancellor Ross was presented with a "Statement of Fees and Expenses" pertaining to the Pattersons's attorney's fees. The statement showed a total of $21,537.94 in attorney's fees and costs. This statement reflected the fees of the Moffett Law Firm in the amount of $17,368.84, the fees of the Pattersons's former attorney, Julian Fagan, in the amount of $2,862.50, and "costs and other expenses" in the amount of $1,306.60. The statement showed that the Pattersons had paid $21,110.10 toward these expenses, leaving a balance to be paid of $427.84. At the continuation of the trial on September 23, 2002, Jackie Patterson testified that his attorney's fees and expenses then totaled $23,326.34. The court admitted an exhibit reflecting this new amount, which did not include attorney's fees paid to Julian Fagan or expert witness fees.
¶ 35. On appeal, the Pattersons claim that they incurred attorney's fees totaling $27,924.84 and complain that the chancellor's award of $15,000 was unreasonable. In awarding attorney's fees, Chancellor Ross stated, "this Court is of the opinion that Patterson is entitled to reimbursement for expert witness fees, attorney's fees, and all costs of same. The Court hereby awards an attorney's fee in the sum of $15,000 for attorney's fees...." Thus, Chancellor Ross awarded $15,000 in attorney's fees, but did not state any reasons for awarding less than the amount requested.
¶ 36. Chancellor Mask reviewed the attorney's fee award in her order denying the parties' motions for a new trial. Chancellor Mask found that Chancellor Ross had considered the Rule 1.5 factors and the McKee factors in rendering the attorney's *137 fees award. While Chancellor Mask's order was otherwise well-reasoned and supported by the law and the evidence, this finding was manifestly erroneous. Perhaps inadvertently, Chancellor Ross did not expressly apply the Rule 1.5 or McKee factors in determining a reasonable attorney's fee. His award was not substantiated by any factual determinations. Therefore, the award was arbitrary. We have no alternative but to reverse and remand for the chancellor to determine a reasonable attorney's fee award considering the factors stated in Rule 1.5 and McKee, and to make supporting findings of fact and conclusions of law concerning those factors. See Miss. Power & Light Co. v. Cook, 832 So.2d 474, 487(¶ 42) (Miss. 2002).

ISSUES ON CROSS-APPEAL

I. THE PATTERSONS SHOULD NOT BE ALLOWED TO CLAIM OWNERSHIP OF THE QUARTER-ACRE WHEN THEY DID NOT HOLD RECORD TITLE TO THE QUARTER-ACRE AT THE TIME OF THE ALLEGED TRESPASS.
¶ 37. The Pattersons claimed an interest in the quarter-acre by a land sale contract executed on March 4, 1996, in which Mandie F. Stanford and Tammy Stanford Lee (the Stanfords) agreed to convey 51.73 acres to the Pattersons. The contract contained a clause stating that the parties agreed that the Pattersons had the "right to occupy the dwelling and exercise all incidents of ownership." The Pattersons were to insure the property and to pay the property taxes for 1996. The Pattersons paid a down payment. They were to pay the balance of the purchase price in installments to the Stanfords, until the sale of their Illinois residence, at which event the balance was due in a single balloon payment. The Stanfords agreed to execute a deed conveying the property to the Pattersons when the balance of the purchase price was paid. A warranty deed from the Stanfords to the Pattersons was signed on October 29, 1999, and recorded on January 14, 2000.
¶ 38. The chancellor found that the Pattersons had owned the quarter-acre by deed at the time of the hearing and by contract at time of the initial trespass in May 1999. On cross-appeal, Holleman argues that, since the Pattersons did not have record title to the quarter-acre in May 1999, they were barred from complaining of the trespass. Indeed, "[a] contract of purchase and sale gives [the purchaser] rights, but not ownership." Flowers v. McCraw, 792 So.2d 339, 342(¶ 6) (Miss.Ct.App.2001). "Under the doctrine of `prior trespass,' the deed to land does not implicitly convey any right of action for trespasses or property damage that occurred prior to the transaction." Id. at (¶ 8). However, a "trespass action can be explicitly assigned by the seller of land." Id. at (¶ 9). The Pattersons did not own the property in May 1999. But, under the terms of the land sale contract, in May 1999 they had the right to occupy the property and to "exercise all incidents of ownership," including the right to defend the property from a trespass. This issue is without merit.
¶ 39. Holleman also contends that the Pattersons's sixty-acre parcel did not include the quarter-acre. He avers that the legal description in the land sale contract and the warranty deed indicated that the center line of Lee County Road 1597 was the eastern boundary of the property conveyed. Therefore, he argues, the Pattersons did not own property lying east of Lee County Road 1597. This argument is without merit. The legal description of the sixty-acre parcel, less and except the previously conveyed 8.27 acre parcel, indicates *138 that the eastern boundary of the parcel was the Lee County line.
¶ 40. Holleman further argues that, since the Beachum deed to the Sparks was recorded before the Pattersons recorded their deed from the Stanfords, the Sparks's deed had priority over the Pattersons's deed. Mississippi Code Annotated section 89-5-1 (Rev.1999) provides, "after filing with the clerk, the priority of time of filing shall determine the priority of all conveyances of the same land as between the several holders of such conveyances." The Beachum deed purporting to convey the quarter-acre to the Sparks was recorded on August 13, 1999. The Pattersons recorded their deed to the quarter-acre on October 29, 1999. Holleman argues that, since the Sparks recorded their deed first, their deed took precedence over the Pattersons's. This argument is without merit as it presumes that Beachum actually owned the quarter-acre and conveyed it to the Sparks. Since Beachum never owned the quarter-acre or conveyed it to the Sparks, the Beachum deed was ineffective to establish the Sparks's priority ownership over the Pattersons.
¶ 41. Finally, Holleman argues that the chancellor erred in finding that the Sparks had not established the elements of adverse possession. A person claiming adverse possession bears the burden of proving by clear and convincing evidence that the possession of the property is: "(1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." Thornhill v. Caroline Hunt Trust Estate, 594 So.2d 1150, 1152-53 (Miss.1992) (quoting West v. Brewer, 579 So.2d 1261, 1262 (Miss.1991)).
¶ 42. As proof that the Sparks adversely possessed the quarter-acre, Holleman points to the testimony of Dorsey Riley, who stated that, as a child, he had lived on the eighty-acre parcel that was later divided into ten-acre lots. He stated that his family had not owned the property, but had lived upon it. Riley stated that his family had always used the property up to the Lee County Road 1597 and that a fence came to the road bank. However, he testified that the property did not have ingress and egress from Lee County Road 1597. Riley's testimony did not establish by clear and convincing evidence that the Sparks owned the quarter-acre through adverse possession. The chancellor's rejection of the Sparks's adverse possession claim was not manifestly erroneous.

II. THE SPARKS'S DRIVEWAY, AS BUILT, IS WITHIN THE COUNTY ROAD RIGHT OF WAY AND, THEREFORE, ALL CONTEMPT SANCTIONS AGAINST HOLLEMAN SHOULD BE REVERSED.
¶ 43. At the trial, the Sparks sought to establish that the portion of their driveway that encroached upon the Patterson's quarter-acre was actually within the county road right-of-way. Therefore, the Sparks argued, they were entitled to use the driveway for access to Lee County Road 1597. The chancellor found that the evidence was insufficient to prove that the county road right-of-way gave the Sparks access to their property.
¶ 44. On appeal, Holleman argues that the chancellor's finding was manifestly erroneous because the evidence showed that the Lee County Road 1597 right-of-way extended to the Sparks's western property line. A survey obtained by the Pattersons showed that the northwestern point of the Sparks's property was 15.58 feet from the center line of Lee County Road 1597. The driveway was approximately eighteen feet south of this point, and was just over 15.58 *139 feet from the center line of the county road. Holleman's surveyor, Chris Barker, stated that, if the county maintained the road within eighteen feet of the center line, then the driveway would be entirely within the county right-of-way. However, Barker testified that, if the county maintained Lee County Road 1597 from ditch bank to ditch bank, then a portion of the driveway crossing the quarter-acre would be outside of the county right-of-way. John Phipps, Sr., a Lee County road manager, testified that the county maintains the road from ditch bank to ditch bank. He stated that this distance was normally thirty-five feet, but that it could vary depending on the distance from ditch bank to ditch bank on a particular road. Barker testified that a photograph of the driveway showed that the county was not maintaining as far as the Sparks's mailbox, which was situated on the quarter-acre. There was substantial evidence supporting the chancellor's rejection of the Sparks's argument that the portion of their driveway that crossed the quarter-acre lay entirely within the Lee County Road 1597 right-of-way. This issue is without merit.

III. IF IT IS DETERMINED THAT THE SPARKS'S DRIVEWAY IS WITHIN THE COUNTY ROAD RIGHT-OF-WAY, THEN ALL SANCTIONS AGAINST HOLLEMAN SHOULD BE REVERSED.
¶ 45. Holleman avers that, if this Court finds that the Sparks were entitled to use the driveway because it lies within the county road right-of-way, then the chancellor's order for Holleman to provide alternate access for the Sparks was erroneous. Therefore, Holleman argues, this Court should reverse the sanctions imposed against Holleman for his contumacious failure to provide the Sparks with alternate access. We have affirmed the chancellor's finding that the Sparks were not entitled to use the driveway. Consequently, Holleman is not relieved of his responsibility to provide the Sparks with alternate access and we do not disturb the chancellor's assessment of contempt sanctions against Holleman for his failure to timely do so.
¶ 46. THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART ON DIRECT APPEAL FOR A DETERMINATION OF ATTORNEY'S FEES CONSISTENT WITH THIS OPINION AND IS AFFIRMED ON CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED IN EQUAL PARTS TO THE APPELLANTS/CROSS-APPELLEES AND THE APPELLEE/CROSS-APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, IRVING, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] At the trial, Holleman maintained that, though the Sparks's property did not reach the road via the "deed line," the Sparks's "possession line" went to the road. The chancellor found that the Sparks had failed to prove the elements of adverse possession or easement by prescription.
[2] Damages available at common law for trespass to land consist of nominal damages for the invasion itself and actual damages for any property destruction caused by the invasion. Chevron Oil Co. v. Snellgrove, 253 Miss. 356, 364, 175 So.2d 471, 475 (Miss.1965).